COMMONWEALTH of Pennsylvania, DEPARTMENT OF CORRECTIONS, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (WAGNER–STOVER), Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2009.

Decided Oct. 1, 2010.

Reargument Denied Nov. 19, 2010.

Thomas Ollason and Shawn P. Kenny, Camp Hill, for petitioner.

Judson B. Perry, Wormleysburg, for respondent.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

The Commonwealth of Pennsylvania, Department of Corrections (Department) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying the Department's petition to terminate Brenda Wagner–Stover's (Claimant) workers' compensation benefits. In doing so, the Board held that the Workers' Compensation Judge (WCJ) was free

to disregard the adjudication of the Secretary of Corrections that Claimant had fully recovered from her work-related injuries and, thus, was no longer eligible for the benefits provided to prison employees injured on the job by Act 632.[1] Because the Secretary's adjudication collaterally estopped the WCJ from finding that Claimant was *not* fully recovered, we conclude that the Board erred and, thus, reverse.

### Factual and Procedural History

■ Claimant was employed as a canteen manager in the commissary at the State Correctional Institution at Camp Hill when, on October 25, 1989, a prison riot erupted. Claimant was not at work that day. By the next day, when Claimant reported to work, the prisoners had been locked up and were physically incapable of injuring her. They were, however, able to hurl obscenities her way, and they did so. Also on that day, Claimant discovered that her name was on a prisoner "hit list." These events, according to Claimant, caused her to suffer a psychiatric injury. The Department issued a notice of compensation payable (NCP) accepting liability for Claimant's work-related post traumatic stress disorder and agreeing to pay Claimant compensation benefits for total disability under Section 306(a)(1) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 511(1).[2] The Department also paid Claimant full salary in accordance with Act 632.[3]

Claimant returned to work on two occasions. In 1990, Claimant worked at State Police Headquarters, but she left when she learned that inmates appeared in the building from time to time. Beginning in February 1992, Claimant worked for 16 months as a stock clerk in a Department facility until one day an inmate exposed himself to her. Under a supplemental agreement, the Department acknowledged that this incident caused a recurrence of Claimant's total disability as of June 16, 1993. The agreement also clarified that Claimant was not entitled to collect both her Act 632 and workers' compensation benefits.[4]

When Claimant refused a job at State Police Headquarters, the Department sought a modification of her disability ben-

---

1. Act of December 8, 1959, P.L. 1718, No. 632, *as amended,* 61 P.S. §§ 951–952. In 2009, when its terms were codified into 61 Pa.C.S. § 1101, Act 632 was repealed. Because the present litigation has been governed by Act 632, we will refer to Act 632 throughout this opinion.

2. For a purely mental work injury, the claimant must prove abnormal working conditions. Working in a correctional facility is inherently dangerous, making it difficult for an employee to prove abnormal working conditions. *Cantarella v. Department of Corrections,* 835 A.2d 870, 873–874 (Pa.Cmwlth.2003). Had Claimant filed a claim petition, it would have been difficult for her to prove that the events of October 26, 1989, constituted abnormal working conditions.

3. Section 1 of Act 632 states, in relevant part, as follows:

Any employe of a State penal or correctional institution under the Bureau of Correction or the Department of Justice ... who is injured during the course of his employment by an act of any inmate ... shall be paid, by the Commonwealth of Pennsylvania, his full salary, until the disability arising therefrom no longer prevents his return as an employe of such department, board or institution at a salary equal to that earned by him at the time of his injury.
61 P.S. § 951.

4. This is mandated by Section 1 of Act 632, which states in relevant part:

During the time salary for such disability shall be paid by the Commonwealth of Pennsylvania any workmen's compensation received or collected for such period shall be turned over to the Commonwealth....
61 P.S. § 951.

efits. The Department also filed a review petition, alleging that Claimant's ongoing medical treatment was no longer related to the work injury but, rather, related to Claimant's pre-existing personality disorder. In 1995, the WCJ denied both petitions. The WCJ agreed with the Department's medical expert, Dr. Gary Glass, that Claimant's ongoing problems were likely related to her personality disorder, which was not work-related. Nevertheless, the WCJ deferred to the opinion of Dr. Henry Wehman, Claimant's treating psychiatrist since 1989, that her post traumatic stress disorder continued to render her not able to work.

Several years later, the Department filed a petition to terminate workers' compensation benefits as of October 1998, alleging that Claimant had fully recovered from her work injury. In the alternative, the Department requested a suspension of benefits because it had again offered Claimant a job she could perform. On May 25, 2000, the WCJ denied both petitions, concluding that Claimant could not perform the offered job and was not fully recovered from her work injury.

In December 2004, the Department offered Claimant a job as a Clerk I in its Office of Professional Responsibility, where inmates never appeared, at a salary higher than her pre-injury wage. Claimant refused the job.

The Department then instituted an administrative proceeding to terminate Claimant's Act 632 benefits. The Department asserted that Claimant had recovered from her post traumatic stress disorder and that any remaining problems were related to her personality disorder. The Department assigned an outside hearing examiner to hear the evidence and to recommend an adjudication.

At the hearing, the Department presented the deposition testimony of Larry A. Rotenberg, M.D., who performed an independent medical examination (IME) of Claimant on June 21, 2004. Dr. Rotenberg is a board certified psychiatrist who has long worked with Vietnam veterans afflicted with post traumatic stress disorder. He began this specialty in 1969 as chief of psychiatry at the Army Medical Center in Okinawa. Dr. Rotenberg conducted an extensive psychiatric interview of Claimant; reviewed her psychological test results; and studied her voluminous medical records. Dr. Rotenberg diagnosed Claimant with a personality disorder, with borderline histrionic and narcissistic features, which he found to pre-exist the 1989 work incident at the Camp Hill prison. Observing that Claimant was not exposed to real danger at the prison, Dr. Rotenberg explained that Claimant's post traumatic stress disorder would have been mild and of short duration, not 15 years. He concluded that Claimant's ongoing symptoms were attributable to her personality disorder and had nothing to do with the 1989 prison riot. Dr. Rotenberg opined that Claimant was capable of doing the work of the Clerk I position offered by the Department.

Claimant testified that a notice to attend an IME triggers memories of the 1989 work incident and causes her to get physically ill. Her symptoms include nightmares and vomiting.

Claimant also presented the deposition testimony of Henry Wehman, M.D., Ph.D., who has treated Claimant for post traumatic stress disorder since 1989. Dr. Wehman opined that Claimant has not recovered and cannot return to work for the Department, because contact with the Department triggers her symptoms. However, Dr. Wehman conceded that Claimant also displays symptoms of a personality disorder and that she might be able to do the Clerk I job.

The Department's hearing examiner accepted the testimony of Dr. Rotenberg over that of Dr. Wehman and made the following relevant conclusions:

3. The [Department] has proved by competent and credible evidence that the Claimant is no longer suffering from work related [post traumatic stress disorder], but rather from a personality disorder NOS with borderline histrionic and narcissistic features which is not work related.

\* \* \*

6. The Claimant is no longer entitled to Act 632 benefits.

7. *The Claimant is now fully recovered from her [post traumatic stress disorder] and is able to return to the Clerk I position at OPR that has been offered to her by the [Department].*

Hearing Examiner Opinion, October 28, 2005, at 25, 26; Conclusions of Law 3, 6–7; Reproduced Record at 78a, 79a (R.R. ____) (emphasis added). The hearing examiner recommended that Claimant's Act 632 benefits be terminated immediately.

Claimant filed exceptions to the hearing examiner's proposed report. However, the Secretary of Corrections adopted the hearing examiner's opinion and terminated Claimant's Act 632 benefits in an order of February 17, 2006. Claimant appealed, and this Court affirmed. *Stover v. Department of Corrections/SCI–Camp Hill*, (Pa. Cmwlth., No. 531 C.D.2006, filed September 28, 2006).

The Department then filed a petition with the Bureau of Workers' Compensation to terminate Claimant's workers' compensation benefits. Claimant filed an answer denying that she was fully recovered. She also filed a review petition, seeking to amend the description of her work injury on the 1989 NCP to include temporomandibular joint disorder (TMJ). The peti-

tions were heard in one proceeding before the WCJ.

In support of its termination petition, the Department offered the Secretary's adjudication, affirmed by this Court, finding Claimant to be fully recovered from her work-related post traumatic stress disorder as of June 2004. The Department argued that the Secretary's Act 632 adjudication collaterally estopped Claimant from asserting that she was not fully recovered in the workers' compensation proceeding. The Department offered no evidence beyond the Secretary's factual findings.

In opposition to the termination petition, Claimant testified that she is not fully recovered from her post traumatic stress disorder; that she continues to have nightmares and anxiety; and that she is fearful of chance encounters with former inmates whenever she leaves her home. She continues to see Dr. Wehman and Mr. David Timme, a therapist associated with Dr. Wehman, every two weeks. Claimant reiterated that she does not want to work for the Department or in any position in the criminal justice system.

With respect to her review petition, Claimant testified that whenever she thinks about the prison riot, she clenches her jaw so hard that, on occasion, she has broken teeth. She now wears an appliance to protect her teeth. Claimant has been treated for this problem by Donald D. Dinello, D.M.D., an oral and maxillofacial surgeon, since 1995; she sees him every three months.

Claimant submitted an April 24, 2006, report from Dr. Wehman and Mr. Timme, opining that Claimant was not fully recovered from her post traumatic stress disorder and could not work. She did not present their deposition testimony. Claimant also submitted documentation from Dr. Dinello, stating that he has treat-

ed Claimant since February 1995 for TMJ. He attributed the TMJ to her post traumatic stress disorder, explaining that her TMJ is largely psychosomatic. Dr. Dinello opined that until Claimant's emotional tension stemming from her post traumatic stress disorder is resolved, her TMJ pain will continue.

The WCJ rejected the Department's argument that the Secretary's adjudication in the Act 632 proceeding was conclusive on the factual question of whether Claimant was recovered from her work injury. Accordingly, he denied the Department's termination petition and imposed unreasonable contest attorney's fees upon the Department for not presenting evidence in support of its termination petition. Finally, the WCJ granted Claimant's review petition and added TMJ as a work injury.

On appeal, the Board reversed the unreasonable contest determination because "there is no brightline law as to when collateral estoppel applies" in Act 632 and workers' compensation proceedings. Board opinion, May 22, 2008, at 14. The Board otherwise affirmed. The Department then petitioned for this Court's review.[5]

 On appeal, the Department raises two issues for our consideration. First, the Department argues that the factual finding in the Act 632 proceeding that Claimant had fully recovered from her work injury was entitled to preclusive effect in the workers' compensation proceeding. Second, the Department argues that the doctrine of *res judicata* barred Claim-

ant from pursuing a review petition to add TMJ as a newly discovered work injury.[6]

### Collateral Estoppel Effect of Act 632 Adjudication

In its first issue, the Department argues that the Secretary's finding of full recovery in the Act 632 proceeding collaterally estopped the WCJ from finding that Claimant had not fully recovered. As such, the Department asserts, the WCJ was obligated to grant the Department's termination petition as a matter of law.

 Collateral estoppel, also known as issue preclusion, is designed to prevent relitigation of questions of law or issues of fact that have already been litigated in a court of competent jurisdiction. *Plaxton v. Lycoming County Zoning Hearing Board*, 986 A.2d 199, 208 (Pa.Cmwlth. 2009). "Collateral estoppel is based on the policy that 'a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.'" *Id.* (quoting *McGill v. Southwark Realty Co.*, 828 A.2d 430, 434 (Pa.Cmwlth.2003)). The doctrine of collateral estoppel applies where the following factors are met:

(1) when the issue in the prior adjudication was identical to one presented in the later action;

(2) when there was a final judgment on the merits;

(3) when the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication;

---

5. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

6. These are questions of law over which our review is plenary. *Cohen v. Workers' Compensation Appeal Board (City of Philadelphia)*, 589 Pa. 498, 504, 909 A.2d 1261, 1265 (2006).

(4) when the party against whom it is asserted has had a full and fair opportunity to litigate the issue in a prior action;

(5) when the determination in the prior proceeding was essential to the judgment.

*Callaghan v. Workers' Compensation Appeal Board (City of Philadelphia),* 750 A.2d 408, 412 (Pa.Cmwlth.2000).

Claimant argues that the Department cannot satisfy two of the above-listed factors. First, she argues that the legal issues in each proceeding were different, not identical. Second, she argues that even were the Court to find the issues to be identical, the hearings are conducted under such different procedures that collateral estoppel cannot be invoked. In other words, Claimant asserts that she did not have a full and fair opportunity to litigate the issue of her full recovery in the Act 632 proceeding.

We begin with a review of Supreme Court precedent on how, and whether, an agency adjudication can be given preclusive effect in a subsequent judicial or administrative proceeding. Both parties have focused on this precedent in support of their respective, and directly opposite, positions.

In *Rue v. K–Mart Corporation,* 552 Pa. 13, 713 A.2d 82 (1998), the employer, K–Mart, dismissed Rue for stealing a bag of potato chips from the store. K–Mart then opposed Rue's application for unemployment benefits, asserting that her loss of employment had been the result of her willful misconduct, which rendered her ineligible for benefits. The Referee found that Rue did not steal potato chips and

awarded her unemployment benefits. Rue then filed a defamation action, alleging that K–Mart had injured her reputation by telling other employees that she had stolen potato chips, a fact proven false in the unemployment proceeding. The trial court ruled that K–Mart was collaterally estopped from challenging the Referee's finding that Rue had not stolen a bag of potato chips. The jury awarded Rue approximately $1.5 million, and K–Mart appealed.

The Supreme Court held that the Referee's findings in the unemployment proceeding were not entitled to preclusive effect in the defamation action. The Court found the issues in both proceedings to be identical, reasoning as follows:

> [I]t is an issue of pure fact, concerning whether Rue did or did not steal a bag of potato chips. As such, the differences between the public policies of the Unemployment Compensation Law and the civil action for defamation are not relevant. *A fact is a fact, regardless of public policy.* Thus, we conclude that the first prong of the collateral estoppel test, identity of issues, is satisfied here.

*K–Mart,* 552 Pa. at 19, 713 A.2d at 85 (emphasis added). However, it concluded that K–Mart had been denied a fair opportunity to litigate the question of whether Claimant had stolen potato chips, which barred the application of collateral estoppel. The Supreme Court explained that the casual procedures that govern unemployment compensation hearings are appropriate, given the need to adjudicate promptly in a matter where a small amount of dollars is at risk, *i.e.,* 18 months of unemployment compensation.[7]

---

**7.** Indeed, our Supreme Court has held that a non-attorney may represent an employer in an unemployment compensation proceeding because such representation does not consti-

tute the practice of law given the informal procedures followed in such proceedings. *Harkness v. Unemployment Compensation*

However, these casual procedures barred the application of collateral estoppel in the subsequent defamation proceedings. The Supreme Court reasoned that the

> substantial procedural and economic disparities between unemployment compensation proceedings and later civil proceedings negate the preclusive effect of a Referee's factual findings.... Because of the fast and informal nature of the proceedings before the Referee, as well as the negligible economic consequences thereof, we conclude that K–Mart did not have a full and fair opportunity to litigate the issue of whether Rue stole a bag of potato chips.

*Id.* at 20–21, 713 A.2d at 86.[8]

The other central holding we consider is *Cohen v. Workers' Compensation Appeal Board (City of Philadelphia)*, 589 Pa. 498, 909 A.2d 1261 (2006). In that case, a Philadelphia police officer, Cohen, was injured on duty, entitling him to compensation under the Workers' Compensation Act as well as full salary under Philadelphia Civil Service Regulation 32.[9] Cohen returned to work but sometime later sought reinstatement of his benefits because of pain. The Philadelphia Civil Service Commission denied Cohen's request for Regu-

lation 32 benefits, finding that he was recovered and able to work full time. In a subsequent workers' compensation proceeding, the WCJ found just the opposite, *i.e.,* that he was totally disabled by his work injury, and reinstated benefits. The City appealed, contending that collateral estoppel barred the WCJ from making findings different from the Commission. The Supreme Court held that collateral estoppel did not bind the WCJ to the Commission's findings.

The Court found that the Workers' Compensation Act and Regulation 32 "share an underlying humanitarian objective" in compensating persons injured at work. *Cohen,* 589 Pa. at 512, 909 A.2d at 1270. However, this common objective was not dispositive of the collateral estoppel question. As it did in *K–Mart,* the Court focused on the applicable hearing procedures and on the amount in controversy. Regulation 32 benefits are limited to three years, whereas workers' compensation benefits may last for a lifetime. The eligibility requirements are likewise different.[10] The Court also found significant differences in the procedures governing each hearing, concluding:

> termination of the factual issue by a Workers' Compensation Judge is warranted.

*Id.* at 606.

---

*Board of Review,* 591 Pa. 543, 553, 920 A.2d 162, 168 (2007).

**8.** This Court reached the same conclusion in *Verbilla v. Workmen's Compensation Appeal Board (Schuylkill Nursing Association),* 668 A.2d 601 (Pa.Cmwlth.1995) (en banc). There, we held that a finding in an unemployment case that the claimant was not injured by a patient did not preclude a different finding in a workers' compensation proceeding. We explained:

> We will not apply issue preclusion in this case because to do so would be to hold, in effect, that Claimant loses both cases based on the finding of an unemployment compensation referee even though significantly different procedures apply and different policies and goals are at stake in the workers' compensation proceeding. A fresh de-

**9.** Regulation 32 is the mechanism by which the City fulfills its obligations under the act commonly known as the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638. *Cohen,* 589 Pa. at 500 n. 1, 909 A.2d at 1262 n. 1.

**10.** For example, the Court pointed out that Regulation 32 does not require the City to acknowledge and describe the work injury in an NCP, as does the Workers' Compensation Act. Further, the City may unilaterally stop Regulation 32 benefits. *Id.* at 506–508, 909 A.2d at 1266–1267.

On the procedural side, the Workers' Compensation Act details extensive procedures for resolving various disputes concerning benefits, *see* 77 P.S. §§ 701–791, that are lacking under Regulation 32. Thus, although the Commission has tools at its disposal similar to those available to a workers' compensation judge, such as the power to issue subpoenas, the procedures under Regulation 32 are substantially more *ad hoc* than those pertaining in the workers' compensation arena.

*Id.* at 513, 909 A.2d at 1270. Finally, the Supreme Court observed that the Commission handles a broad range of employment issues, whereas a WCJ decides only workers' compensation claims. Because of all these differences, the Supreme Court held that the Commission's adjudication did not have preclusive effect in the subsequent workers' compensation proceeding, which was governed by "extensive procedures." *Id.* at 514, 909 A.2d at 1271.

*K–Mart* and *Cohen* teach that an agency adjudication can have preclusive effect in a subsequent administrative or judicial proceeding. It is a simple matter to determine identity of issue, because a "fact is a fact," regardless of the context in which it is used. With respect to a "full and fair opportunity to litigate," the task is more complicated, depending, as it does, on the

amount in controversy and the procedures applicable to each proceeding.

Finally, we review this Court's holding in *Yonkers v. Donora Borough,* 702 A.2d 618 (Pa.Cmwlth.1997). There, the claimant, a police officer, sustained injuries in a work-related automobile accident entitling him to benefits under both the Workers' Compensation Act and the Heart and Lung Act.[11] The borough employer filed a termination petition, which the WCJ granted after finding that the claimant had fully recovered from his injury. Thereafter, the borough terminated the claimant's Heart and Lung benefits for the reason that the WCJ's decision was conclusive on the issue of disability. This Court affirmed, holding that a final decision of a WCJ has collateral estoppel effect in a subsequent Heart and Lung Act proceeding.[12] The Department argues that *Yonkers* provides strong precedent in its favor. We do not disagree, but we will decide this case using the principles established by the Supreme Court in *K–Mart* and *Cohen.*

■ We turn, then, to the first question in dispute, which is whether the issues in the Act 632 termination proceeding were identical to those in the workers' compensation termination proceeding. The Department describes the dispositive issue as whether Claimant was recovered from her work injury. Claimant argues that the

---

11. Section 1 of the Heart and Lung Act provides in relevant part that any police officer, correctional employee or other enumerated employee
 who is injured in the performance of his duties ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid by the Commonwealth of Pennsylvania ... his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased.
 53 P.S. § 637.

12. This Court followed *Yonkers* in *Heath v. Pennsylvania Board of Probation and Parole,*

869 A.2d 39 (Pa.Cmwlth.2005), to hold where a WCJ denied a claim petition for workers' compensation based on a mental injury resulting from abnormal conditions, the claimant was estopped from pursuing benefits under the Heart and Lung Act. Likewise, in *Duvall v. Department of Corrections,* 926 A.2d 1220 (Pa.Cmwlth.2007), we held that a WCJ's finding that the claimant could work without restrictions precluded a hearing examiner from reinstating Heart and Lung Act benefits based on a finding that she could not return to work.

legal issues are different because the Department did not have to prove full recovery to terminate her Act 632 benefits. The Department could have terminated Act 632 benefits simply by showing that it offered her a job she was capable of performing and at no wage loss.[13]

 To terminate workers' compensation benefits, the employer must prove that the claimant's disability "has . . . finally ceased." *See* Section 413 of the Workers' Compensation Act.[14] To terminate Act 632 benefits, the employer must prove that the claimant's disability "no longer prevents his return as an employee of [the] department." *See* Section 1 of Act 632, 61 P.S. § 951.[15] Proof of full recovery satisfies the employer's burden to show that the "disability has ceased," in the case of workers' compensation, or "no longer prevents his return [to work]," in the case

of Act 632. *See, e.g., Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.)*, 141 Pa.Cmwlth.253, 595 A.2d 697, 699 (1991); *Mihok v. Department of Public Welfare*, 670 A.2d 227 (Pa. Cmwlth.1996). It is true that the Department must also show that it offered the claimant a job at her pre-injury salary before it can terminate Act 632 benefits, but that evidence has nothing to do with the claimant's ability to work. Here, proof of Claimant's full recovery proved the end of her work-related disability for purposes of either statute. As our Supreme Court noted, "[a] fact is a fact regardless of public policy." *K–Mart*, 552 Pa. at 19, 713 A.2d at 85. In short, the dispositive factual question, full recovery from Claimant's disability, was identical in each proceeding.[16] It is of no moment that the Depart-

**13.** Claimant argues that the legal issues in each proceeding are different because the Department can terminate Act 632 benefits where (1) a claimant is not fully recovered but has recovered enough to do a light duty job and (2) the Department will pay the claimant his pre-injury salary. It is true that had the Department proved that Claimant was only partially recovered, enough to do a light duty job, that proof would not support a termination of workers' compensation disability, for which full recovery must be proved. Proof of partial recovery in an Act 632 proceeding might, however, support a modification of a claimant's workers' compensation disability benefits.

Claimant argues that the Department "chose" the higher factual burden of full recovery in the Act 632 proceeding. To the contrary, the Department made this case because according to the IME of Dr. Rotenberg, Claimant was fully recovered from her post-traumatic stress disorder. Given this IME outcome, the Department had no choice but to prove full recovery.

In short, whether the findings made in an Act 632 proceeding will have preclusive effect in a subsequent workers' compensation proceeding will depend upon the extent of a claimant's recovery, *i.e.*, full or partial recov-

ery, and the nature of the Department's request for relief in the subsequent workers' compensation proceeding, *i.e.*, termination or modification.

**14.** Section 413 of the Workers' Compensation Act states, in relevant part, that a WCJ may

terminate [disability benefits] . . . upon proof that the disability of an injured employe has . . . finally ceased.
77 P.S. § 772.

**15.** Section 1 of Act 632 provides that an injured employee shall be paid his full salary

until the disability arising therefrom no longer prevents his return as an employe of [the] department . . . at a salary equal to that earned by him at the time of his injury.
61 P.S. § 951.

**16.** The dissent argues the contrary, citing *Hardiman v. Department of Public Welfare*, 121 Pa.Cmwlth. 120, 550 A.2d 590 (1988). The question in *Hardiman* was whether the Department of Public Welfare could set aside an employee's application for Act 632 benefits until such time as the WCJ adjudicated the employee's claim petition. This Court held that the Department of Public Welfare had to decide the Act 632 application, in accordance

ment had also to prove that it offered Claimant a job in order to terminate Act 632 benefits.

■ Next we consider whether Claimant had a full opportunity to litigate the extent of her recovery in the Act 632 proceeding. As established in *Cohen*, this factor requires two inquiries: the amount at risk financially and the type of procedural rules governing each proceeding.

■ Available to Claimant were two acts that compensate employees for a work-related disability.[17] Act 632 is more generous because it provides full salary; workers' compensation disability is limited to two-thirds of the average weekly wage. Both benefits have a potentially lifetime duration.[18] As this Court has observed, it is logical for the Department to terminate Act 632 benefits first because they are more generous than workers' compensation benefits. *Keith v. Department of Corrections*, 695 A.2d 938, 942 (Pa.Cmwlth. 1997). In short, the amount in controversy is comparable: potentially lifetime compensation for lost wages caused by a work

injury. This leaves an examination of the procedures applicable to Act 632 proceedings and workers' compensation proceedings.

■ Workers' compensation proceedings are governed by the special rules adopted by the Department of Labor and Industry. *Cohen*, 589 Pa. at 513–514, 909 A.2d at 1270–1271. Act 632 disputes are resolved in a formal administrative hearing before the Department in accordance with the General Rules of Administrative Practice and Procedure, 1 Pa.Code Part II, §§ 31.1–35.251. The General Rules govern practice and procedure before all Commonwealth agencies except where an "agency has promulgated inconsistent regulations on the same subject." 1 Pa.Code § 31.1(c). The Department of Labor and Industry has opted out of the General Rules for workers' compensation litigation.[19]

The Department argues that the General Rules provide a litigant even more process than is provided by the specialized

with its own procedures, one way or the other. By not acting, the Department effected a denial of Act 632 benefits without due process. *Hardiman* has nothing to do with issue preclusion, and the dissent exaggerates its significance to this case.

17. The Workers' Compensation Act provides benefits to injured workers who experience either a temporary or permanent loss of earning power due to the work injury. *Durante v. Pennsylvania State Police*, 570 Pa. 449, 458, 809 A.2d 369, 375 (2002). The purpose of Act 632 is to ensure employees who work in certain state institutions, considered dangerous, that they will receive their full salary if they are injured by an inmate. *Hardiman*, 550 A.2d at 595. That way, "the state can more readily attract employees to and keep them in these essential but dangerous jobs." *Id.*

18. The dissent asserts that the amount in controversy in an Act 632 proceeding is substantially less than that at stake under the

Workers' Compensation Act. This is simply incorrect. Both Acts offer potentially lifetime benefits to a disabled employee although the Act 632 benefits are at full salary and disability compensation is less than full salary. In addition, there are a myriad of ways by which workers' compensation benefits can be modified or suspended, such as an impairment rating evaluation or a labor market survey. *See* Sections 306(a.2) and 306(b) of the Act, 77 P.S. §§ 511.2, 512. By contrast, as long as the employee cannot return to work with the Department, Act 632 benefits continue. In short, contrary to the dissent's assertion, Act 632 exposes the employer to more liability than does the Act.

19. Section 131.4 of the Special Rules of Administrative Practice and Procedure Before Workers' Compensation Judges specifies that the "General Rules of Administrative Practice and Procedure are not applicable to activities of and proceedings before [WCJs]." 34 Pa. Code § 131.4.

rules that govern workers' compensation proceedings. It notes that Claimant aggressively litigated the termination of her lucrative Act 632 benefits; was represented by counsel; presented medical evidence; testified on her own behalf; filed exceptions to the hearing examiner's proposed opinion and order; and appealed the Secretary's decision to this Court. Claimant does not assert that she was denied due process in the Act 632 litigation. She asserts, rather, that because the workers' compensation system is "unique," a WCJ can never be bound by the findings of another agency's adjudication.[20] Indeed, she argues that because Commonwealth agencies are charged with the responsibility to implement widely disparate programs and policies, an adjudication of one agency can never have preclusive effect in another agency's proceeding. She contends that to allow an agency's adjudication to have preclusive effect is to allow one agency to invade another agency's prerogative to administer its program.

The dissent accepts Claimant's sweeping proposition that the factual findings of one state agency can never have preclusive effect in a subsequent proceeding before a different agency. The dissent contends that any other holding will allow one agency to usurp the authority of another. This is not so, for several reasons.

First, the factual findings in an agency's adjudication cannot bind the executive acts of another agency. For example, a WCJ might find that a prison guard fully recovered from a non-disabling injury and on that basis deny the employee's claim for workers' compensation. However, the WCJ lacks the power to direct the Secretary of Corrections also to deny Act 632 benefits. The Secretary is free to exercise his executive authority to grant Act 632 benefits notwithstanding the WCJ's decision. It is only when the Secretary acts in a quasi-adjudicatory capacity that the doctrine of collateral estoppel even becomes operative.

Second, the dissent's proposition cannot be squared with the Supreme Court's holding that a "fact is a fact." *K–Mart*, 552 Pa. at 19, 713 A.2d at 85. Even so, an established fact does not necessarily dictate the outcome of the second agency's proceeding. For example, a WCJ's factual finding of full recovery may be binding in the Department's Act 632 proceeding, but it does not follow that Act 632 benefits will terminate. This is because a prison employee's Act 632 benefits cannot be terminated unless the Department also has a job for the employee that pays her pre-injury salary.

Third, the dissent fails to acknowledge that agencies routinely use issue preclusion in administering their programs. For

**20.** Claimant argued that the Secretary was collaterally estopped from terminating her Act 632 benefits because a WCJ had previously found her not fully recovered. This Court stated that the Secretary could make different factual findings because the legal issues in Act 632 and workers' compensation proceedings were different. *Stover v. Department of Corrections/SCI–Camp Hill* (Pa.Cmwlth., No. 531 C.D.2006, filed September 28, 2006), slip op. at 9. Claimant asserts that this statement is the law of the case. We disagree. The law of the case doctrine only applies to "a second review by an appellate court on another phase of the *same* case, i.e., a phase that occurs before the case has ended." *Merkel v. Workers' Compensation Appeal Board (Hofmann Industries)*, 918 A.2d 190, 194 (Pa. Cmwlth.2007) (emphasis in original). This is a new and separate case to which the law of the case does not apply. Further, an unpublished panel opinion cannot bind an *en banc* panel of this Court. In any case, this Court rejected Claimant's collateral estoppel argument in *Stover* because the Secretary considered the question of Claimant's recovery at a point in time later than that considered by the WCJ. *Stover*, slip op. at 9.

example, agencies use criminal convictions as a basis to deny, suspend or revoke licenses. *See Bethea–Tumani v. Bureau of Professional and Occupational Affairs,* 993 A.2d 921 (Pa.Cmwlth.2010) (request for a license as a registered nurse denied due to prior convictions for aggravated assault, insurance fraud and conspiracy). They also consider enforcement decisions made by other states. *See Khan v. State Board of Auctioneer Examiners,* 577 Pa. 166, 842 A.2d 936 (2004) (auctioneers sanctioned in Pennsylvania based on disciplinary actions taken by Virginia, Maine, Texas and Wisconsin).

The dissent's sweeping proposition that an agency's adjudication can never have preclusive effect on another agency's fact finding is out of step with longstanding federal administrative law jurisprudence. *See, e.g., Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940) (adjudication of the National Bituminous Coal Commission that the Sunshine Company produced bituminous coal, not anthracite coal, was binding upon the Internal Revenue Service); *Salguero v. City of Clovis,* 366 F.3d 1168 (10th Cir.2004) (finding of municipal grievance body precluded a terminated employee from pursuing a Section 1983 action in federal court). Federal collateral estoppel jurisprudence is not limited to adjudicatory findings of federal agencies. The United States Supreme Court has directed that factual findings made in a quasi-adjudicatory proceeding of a state agency will have preclusive effect in a subsequent court action. *University of Tennessee v. Elliott,* 478 U.S. 788, 798, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (holding that a state

agency's adjudication should be given collateral estoppel effect in federal court so long as parties had an adequate opportunity to litigate the facts). Indeed, federal courts use analysis similar to that adopted by the Pennsylvania Supreme Court in *K–Mart* and *Cohen.* For example, in *Littlejohn v. United States,* 321 F.3d 915 (9th Cir.2003), the Department of Veterans Affairs found that the claimant's disability resulted from negligent care received at a Department hospital; however, the court refused to give those findings preclusive effect in a subsequent tort action because the Department's proceeding was informal in nature; imposed a low burden of proof on the claimant; involved a relatively small amount of monetary benefits; and the Department had been precluded from developing evidence in opposition to the claimant's claim.

The dissent acknowledges that adoption of its position would require this Court to overrule its precedent in *Yonkers,* 702 A.2d 618; in *Duvall v. Department of Corrections,* 926 A.2d 1220 (Pa.Cmwlth.2007); and in each and every other case in which collateral estoppel was held to apply. More troublesome is the fact that the dissent's position would require us to disregard the Supreme Court's holding in *K–Mart* and in *Cohen.*[21] If the Supreme Court had intended its holding in *Cohen* to ban issue preclusion between agencies, it would have so stated. Instead, *Cohen* established an analytical framework for determining when an agency's adjudication will have preclusive effect in a subsequent agency proceeding or even subsequent ju-

---

**21.** The dissent begins with the declaration that *Cohen* requires an affirmance. *Cohen* requires an examination of the amount in controversy and the procedures used in each agency's hearing. That examination led to the majority's conclusion that the amount in

controversy was almost identical and that the procedures in the Act 632 hearing gave Claimant a full and fair opportunity to litigate full recovery. Contrary to the dissent's claim, *Cohen* requires a reversal.

dicial proceeding. Under the dissent's logic, this framework would never be used.

In short, *Cohen* established that an agency adjudication can, and will, have effect in another agency's proceeding, or even a judicial proceeding, so long as the amount in controversy is comparable and each proceeding involves procedures sufficiently formal to allow each litigant to develop a complete record on a disputed fact.[22] Here, the matter at stake in each proceeding, compensation for a work injury, was virtually without difference, and the procedures applicable to each agency's hearing were comparable. If anything, the procedures governing an Act 632 proceeding are more "extensive." *Cohen*, 589 Pa. at 513, 909 A.2d at 1270. In sum, the

issue of Claimant's full recovery was identical in each proceeding, and Claimant had a full opportunity in the Act 632 hearing to litigate her full recovery.[23] She is not entitled to a second bite at the apple on this question.

### Effect of *Res Judicata* on Expansion of Claimant's Work Injury

In its second issue, the Department argues that Claimant was barred by the doctrine of *res judicata* from adding TMJ to her list of work injuries.[24] This is because Claimant had years to seek an amendment to her NCP but did nothing until her Act 632 benefits were terminated. Claimant responds that Section 413 of the Workers' Compensation Act allows the WCJ to amend the NCP at any time.[25]

---

**22.** In *Scierka v. Department of Corrections*, 852 A.2d 418 (Pa.Cmwlth.2004), the claimant applied for both workers' compensation and Act 632 benefits, alleging post traumatic stress disorder. A WCJ granted workers' compensation benefits, and the Secretary denied Act 632 benefits. Without any analysis of the principles of collateral estoppel we stated:

> *Cantarella* controls. The doctrine of collateral estoppel does not preclude the Department from making findings contrary to those made by a WCJ in a collateral workers' compensation proceeding.

*Id.* at 422. Likewise, *Cantarella v. Department of Corrections*, 835 A.2d 870 (Pa. Cmwlth.2003) also offered no analysis on collateral estoppel.

Neither party cites to *Scierka*, but the dissent does. *Scierka* involved a claim petition, and, as such, was governed by different legal standards. To be eligible for Act 632 benefits, the injury must be caused by the act of an inmate; there is no such causation requirement for workers' compensation. Contrary to the dissent's assertion, *Scierka* had nothing to do with full recovery.

**23.** Claimant suggests that there is an opportunity for bias in the Act 632 proceedings because the Secretary of Corrections is not disinterested because the benefits come out of his Department's budget. The Supreme Court in *Cohen* rejected a similar allegation of bias as "bald, unfounded, and [in] conflict

with the presumption of regularity that courts generally afford to administrative proceedings." *Cohen*, 589 Pa. at 511, 909 A.2d at 1269.

**24.** The doctrine of technical *res judicata*, which like collateral estoppel is also known as issue preclusion, applies when four conditions are present: "(1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued." *Merkel v. Workers' Compensation Appeal Board (Hofmann Industries)*, 918 A.2d 190, 192 (Pa. Cmwlth.2007). The doctrine applies not only to matters that were actually litigated in a prior proceeding, but also to "matters that *could have been, or should have been, litigated* in [a prior] proceeding." *Id.* at 193 (emphasis added).

**25.** Section 413 provides in relevant part:

> A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable ... upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased....

77 P.S. § 772.

The Department's *res judicata* claims are mooted by our decision on the first issue. Claimant was found in the Act 632 proceeding to be fully recovered as of June 21, 2004, and by reason of collateral estoppel that factual finding is binding on the WCJ. It is too late for the WCJ to amend an NCP in 2006 after Claimant has been found to be fully recovered for her work-related injuries in 2004. The file is closed.

In any case, Dr. Dinello, Claimant's medical expert, opined that Claimant's TMJ would last until she recovered from her post traumatic stress disorder. Claimant fully recovered from her post traumatic stress disorder in 2004. Therefore, Dr. Dinello's opinion is not competent to show that Claimant's TMJ dysfunction in 2006 is work-related.

### Conclusion

Only in our administrative state could an anomalous situation such as this arise. A WCJ, who is an employee of the Department of Labor and Industry, claims the right to disregard the final decision of the secretary of another agency, a cabinet officer. Both agencies are under the direction of the Governor of Pennsylvania. It is a testament to the independence of those employed by Commonwealth agencies to act in a quasi-adjudicatory function that the WCJ refused to defer to a finding of the Secretary of Corrections. However, the WCJ erred. The fact of Claimant's full recovery from the post-traumatic stress disorder caused by the words and writings of prison inmates was made by the Secretary of Corrections after a full and fair hearing. The fact of her complete recovery "is a fact" and entitled to be given preclusive effect in the workers' compensation proceeding.

Accordingly, the Board's order is reversed.

President Judge LEADBETTER dissents.

### ORDER

AND NOW, this 1st day of October, 2010, the order of the Workers' Compensation Appeal Board dated May 22, 2008, in the above captioned matter is hereby REVERSED, and the workers' compensation benefits of Brenda Wagner–Stover are terminated as of June 21, 2004.

### DISSENTING OPINION BY Judge PELLEGRINI.

Because it is against our Supreme Court's decision in *Cohen v. Workers' Compensation Appeal Board (City of Philadelphia)*, 589 Pa. 498, 909 A.2d 1261 (2006), which is virtually identical to this case, I disagree with the majority's holding that the Workers' Compensation Judge (WCJ) was collaterally estopped from determining that Brenda Wagner–Stover (Claimant) continued to suffer from work-related injuries after the Department of Corrections (Department) found the opposite in Claimant's Act 632 hearing. Accordingly, I respectfully dissent.

This appeal arises out of the prison riot in 1989 at the State Correctional Institution at Camp Hill where Claimant worked for the Department as a canteen manager in the commissary. On the second day of the prison riot, Claimant reported to work. As she walked through the prison, she was verbally assaulted by locked-down prisoners who shouted obscenities and sexual comments at her. While Claimant did not come into physical contact with the prisoners, she later learned that she was the only female on the prisoners' "hit list." Claimant filed a claim asserting that she suffered from post-traumatic stress disorder as a result of this incident at the Camp Hill prison. The Department agreed to pay Claimant both workers' compensation

and Act 632 benefits.[1]

The Department sought to terminate Claimant's workers' compensation benefits. In a November 1995 decision, the WCJ denied the Department's request to terminate benefits finding that Claimant was still suffering from post-traumatic stress disorder. In March 1999, the Department again petitioned for a termination of Claimant's workers' compensation benefits. In a May 2000 decision, the WCJ found that Claimant was still suffering from her work-related post-traumatic stress disorder and had not fully recovered.

In December 2004, the Department brought an administrative action seeking to stop Claimant's Act 632 benefits asserting that Claimant was no longer suffering from a post-traumatic stress disorder, but rather suffered from a personality disorder that pre-existed the 1989 work-related incident. After a hearing, the Secretary found that Claimant had fully recovered from her work-related post-traumatic stress disorder. Among other reasons, Claimant appealed to this Court contending that collateral estoppel prevented the Secretary from finding that she had recovered from her post-traumatic stress syndrome because the Secretary was bound by the WCJ's decision that she had not. Affirming the Secretary's decision to stop Act 632 benefits, we held (Leavitt, J.) that "[b]ecause the legal issues in an Act 632 proceeding are different from those in a workers' compensation proceeding, a hearing examiner can make factual findings that are contrary to those made by a WCJ in a collateral workers' compensation proceeding. In addition, because a claimant's condition may change, the principle of collateral estoppel does not preclude an employer who was unsuccessful in terminating a claimant's benefits on one occasion from trying again." (Citations omitted.)[2]

In 2006, Employer filed a termination petition for the third time to terminate Claimant's workers' compensation benefits. Among other things, it argued that collateral estoppel prevented the WCJ from finding that she had not recovered from her work-related injury because the Secretary had found that she had recovered from her psychic injury in terminating benefits under Act 632. Finding that she had not fully recovered from her work-related injuries, the WCJ denied Employer's termination petition.[3]

---

1. Section 1 of the Act of December 8, 1959, P.L. 1718, No. 632, *as amended,* (Act 632), 61 P.S. § 951, repealed in part, (not here relevant) by Section 9(b)(2) of the Act of October 4, 1978, P.L. 909. Act 632 provides, in relevant part:

 > Any employe of a State penal or correctional institution under the Bureau of Correction of the Department of Justice ... who is injured during the course of his employment by an act of any inmate or any person confined in such institution ... shall be paid, by the Commonwealth of Pennsylvania, his full salary, until the disability arising therefrom no longer prevents his return as an employe of such ... institution at a salary equal to that earned by him at the time of his injury.

2. *Stover v. Department of Corrections,* No. 531 C.D.2006 (Pa.Cmwlth., filed September 28, 2006).

3. The WCJ made the following relevant findings of fact:

 > 3. Claimant has sleeping problems and nightmares. The nightmares involve the prison and inmates. Claimant also has high blood pressure which she attributes to her PTSD. Claimant does not believe she is fully recovered from her PTSD because she still has a fear of running into inmates. She currently treats with Dr. Wehman and Dr. Timme every two weeks for her PTSD. She is taking Prozac for her mental condition and Toprol for her blood pressure.
 > 4. Claimant's condition has worsened....
 > 5. Claimant does not believe she can perform her pre-injury job. She no longer wants to work in criminal justice....

Even though we had held that collateral estoppel did not bind the Secretary in an Act 632 proceeding following a WCJ's decision that Claimant had not recovered, the Department then filed this appeal contending that collateral estoppel did bind the WCJ to follow the Secretary's findings[4] that Claimant had fully recovered from her work-related injury even though this position was inconsistent with its position that a WCJ's findings were not binding on the Secretary in an Act 632 proceeding. The majority (Leavitt, J.), adopting the Department's position, supplants the WCJ's findings with those of the Secretary and terminates Claimant's workers' compensation benefits. Not only do I dissent because this outcome is inexplicable given that we have held that a workers' compensation decision does not bind the Secretary in an Act 632 proceeding, I dissent because that decision is against Supreme Court precedent and our precedent.

"Collateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated. *Id.* The identical issue must have been necessary to final judgment on the merits, and the party against whom the plea is asserted must have been a party, or in privity with a party, to the prior action and must have had a full and fair opportunity to litigate the issue in question." *Bortz v. Workers' Compensation Appeal Board (Reznor Div. of FL Industries)*, 546 Pa. 77, 81, 683 A.2d 259, 261 (1996), *quoting Balent v. City of Wilkes–Barre*, 542 Pa. 555, 564, 669 A.2d 309, 313 (1995). *See also Benginia v. Workers' Compensation Appeal Board (City of Scranton)*, 805 A.2d 1272 (Pa.Cmwlth.2002).

We have consistently held that the legal or factual issues in the workers' compensation termination proceeding are not identical to the issues in the Act 632 termination proceeding and may be distinguished by examining the underlying substantive provisions of Act 632 and the Workers' Compensation Act.[5] In *Hardiman v. Depart-*

. . . .

8. After careful consideration, and having observed Claimant's demeanor when she testified, this Judge finds Claimant's testimony credible and persuasive and accepts it as fact. . . .

9. Claimant presented the April 24, 2006 medical report of Drs. Wehman and Timme. This report states as follows.

10. Claimant continues to treat with Drs. Wehman and Timme every one to three weeks for her PTSD. Claimant has made some progress but feels re-traumatized when this process requires her to recall events from the prison riot.

11. Claimant has not fully recovered from her PTSD and . . . she remains unable to return to work.

12. After careful consideration, this Judge finds the opinions of Drs. Wehman and Timme credible, persuasive, and accepts them as fact. Claimant has not fully recovered from her work-related PTSD. The opinions of Drs. Wehman and Timme are accepted as credible because, as Claimant's treating physicians, they are extremely familiar with her condition. Also, their opinions are undisputed by other medical evidence.

. . . .

(WCJ Decision and Order, Findings of Fact (F.F.) Nos. 3–5, 8–12 at 2–3.)

4. The Secretary concluded:

3. The DOC has proved by competent and credible evidence that the Claimant is no longer suffering from work related PTSD, but rather from a personality disorder NOS with borderline, histrionic and narcissistic features which is not work related.

. . . .

6. The Claimant is no longer entitled to Act 632 benefits.

7. The Claimant is now fully recovered from her PTSD and is able to return to the Clerk I position at OPR that has been offered to her by the DOC.

5. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

*ment of Public Welfare,* 121 Pa.Cmwlth. 120, 550 A.2d 590, 594 (1988), this Court stated that the "substantive differences between the two benefit programs (Act 632/534 'full salary' and workers' compensation two-thirds of the employee's wages) support to some extent the ... characterization of them as concurrent rather than having a primary and supplemental relationship." We also found that compensability under workers' compensation is not necessarily a prerequisite to a cognizable claim under Act 632, and that Act 632 benefits are not to be ended without a due process hearing—separate and distinct from the workers' compensation proceeding.

More recently, in *Scierka v. Department of Corrections, State Correctional Institution at Dallas,* 852 A.2d 418 (Pa.Cmwlth. 2004), we held that collateral estoppel did not bar the Secretary from finding that a claimant had fully recovered from a work-related injury when a workers' compensation judge had previously found she had not. In that case, the claimant, a female psychological services specialist employed at SCI–Dallas, was counseling a male inmate when he reached through the bars of his cell and touched her right breast while she was taking notes. She filed a claim with the Department of Corrections for benefits under Act 632 alleging a psychiatric injury. She also filed a claim for workers' compensation benefits. While her claim was pending before the Department, a WCJ granted her claim petition for a

psychic injury. The Department ultimately denied her claim for a psychic injury and denied her Act 632 benefits. She filed an appeal to this Court arguing that the doctrine of collateral estoppel precluded the Department from making contrary findings to those of the WCJ. Relying on *Cantarella v. Department of Corrections,* 835 A.2d 870 (Pa.Cmwlth.2003), also a case with similar facts, we held that the "doctrine of collateral estoppel does not preclude the [Department] from making findings contrary to those made by a WCJ in a collateral workers' compensation proceeding." *Scierka,* 852 A.2d at 422.

The different legal issues involved in each proceeding are evident when considering the standards for terminating benefits in an Act 632 proceeding as compared to a workers' compensation proceeding. Act 632 benefits "are to terminate once the Employer can show that the employee's disability no longer prevents his return to his pre-injury salary." *Williams v. Department of Corrections,* 164 Pa.Cmwlth. 224, 642 A.2d 608, 612 (1994), *citing Wertz v. Department of Corrections,* 148 Pa. Cmwlth. 133, 609 A.2d 899 (1992). In comparison, under the Workers' Compensation Act, the employer must prove that the claimant's work-related "disability has ceased or that any current disability arises from a cause unrelated to the employee's work injury" in order to obtain a termination of benefits.[6] *Campbell v. Workmen's Compensation Appeal Board (An-*

**6.** Section 306(a) of the Act, 77 P.S. § 511, provides that workers' compensation benefits for state employees are generally limited to two-thirds of the employee's wages and not paid as salary. Act 632 establishes a right of subrogation on the part of the Commonwealth in regard to any workers' compensation benefits received or collected by the employee during the period when salary is being paid under Act 632. *Hardiman.* Act 632 benefits are determined independently and

then to avoid stacking benefits, the General Assembly provided means for the state to recover separate workers' compensation benefits that the employee might receive for the same period of disability. *Id.* Although sharing a similar purpose, the two acts operate separately, requiring independent action. *Polk Center v. Workmen's Compensation Appeal Board (Pochran),* 682 A.2d 889 (Pa. Cmwlth.1996).

*tietam Valley Animal Hospital*), 705 A.2d 503, 506 (Pa.Cmwlth.1998). While *Scierka* involves the applicability of a workers' compensation decision to an Act 632 proceeding, the inverse is also true: a workers' compensation judge in a workers' compensation proceeding is not collaterally estopped from making factual findings contrary to those made by a hearing examiner in an Act 632 proceeding because the proceedings are separate and the requirements are distinct.

Our Supreme Court has never held that a decision of one administrative agency is binding on another administrative agency.[7] In *Bortz*, a claimant was terminated from employment due to being out of his work area without permission and insubordinate by failing follow the instructions of the work shop manager. The Workers' Compensation Appeal Board specifically found that he had not engaged in such conduct. In response to a claim for reinstatement of benefits, Employer defended because "Claimant lost said job, however, due to his misconduct at work." The claimant contended that collateral estoppel applied in a workers' compensation proceeding because the standard in the unemployment setting was essentially identical to the standard used in workers' compensation cases to deny benefits—that the claimant's lack of earning power was his own fault. Although the "fact" was the same, our Supreme Court found the issue was not one of misconduct akin to that found in unemployment compensation because the ultimate issue was whether the claimant's injury was again affecting his ability to earn, while unemployment compensation benefits, on the other hand, turned on a question of "willful misconduct," i.e., on the presence or absence of a defined level or degree of misconduct. So while the finding of the same "fact" in a workers' compensation proceeding would arrive at the denial of indemnity benefits, the context in which it was made rendered collateral estoppel inapplicable.

Most pertinent to the case before us is our Supreme Court's decision in *Cohen.* In that case, our Supreme Court addressed the collateral estoppel effect of an earlier Philadelphia Civil Service Commission Regulation 32 proceeding, which found that a police officer could return to a subsequently-filed reinstatement petition in the workers' compensation forum. In that case, the Civil Service Commission found that the police officer/Claimant had fully recovered from his injuries. Reversing our decision, our Supreme Court held that a workers' compensation judge was not bound by the decision of the Philadelphia Civil Service Commission, and the WCJ may conduct a separate evaluation of the evidence stating:

> Both because liability under the Workers' Compensation Act may span a substantially longer period and because the benefits available under Regulation 32 supplant workers' compensation benefits for a defined period, the employee's net recovery, and the City's (or any insurer's) net risk, under Regulation 32 is substantially narrower in scope than the potential liability under the workers' compensation scheme. In particular,

7. Moreover, our Supreme Court has never held that collateral estoppel precludes a court from engaging in its own factfinding. In *Rue v. K–Mart Corp.*, 552 Pa. 13, 713 A.2d 82 (1998), our Supreme Court held that a court need not apply collateral estoppel effect to an unemployment compensation proceeding because in an unemployment compensation proceeding, a Referee clearly did not allow parties to litigate issues in the manner available in a court of record. It noted that the Rules of Evidence did not apply, there was no procedure for prehearing discovery, and that the proceedings by definition were brief and informal.

with regard to an employee claiming total disability, the net amounts in controversy in Regulation 32 proceedings are substantially lower than in a workers' compensation matter that may result in lifetime benefits. See 77 P.S. § 511. On the procedural side, the Workers' Compensation Act details extensive procedures for resolving various disputes concerning benefits, see 77 P.S. §§ 701–791, that are lacking under Regulation 32. Thus, although the Commission has tools at its disposal similar to those available to a workers' compensation judge, such as the power to issue subpoenas, the procedures under Regulation 32 are substantially more ad hoc than those pertaining in the workers' compensation arena.

Moreover, we agree with Claimant that, in recognition of the special character of the Pennsylvania workers' compensation system, it is preferable to permit the determination of disability for purposes of workers' compensation benefits to be made within that scheme, as opposed to by a local civil service commission. As this Court has previously explained, the Workers' Compensation Act's "uniquely detailed substantive and procedural provisions" supplant traditional common law rights and remedies, limiting recoveries in a manner that, in any other context, would be beyond the Legislature's authority. *East [v. Workers' Compensation Appeal Board,* 574 Pa.

16, 25, 828 A.2d 1016, 1021]. Philadelphia's civil service regulations, on the other hand, arise in a significantly different landscape and have a substantially different focus, as they encompass many other forms of employment actions and decisions, with which Regulation 32 benefits are intermingled. Consequently, the Commission administers appeals concerning a materially broader range of subject matter extrinsic to the uniquely structured environment of the Workers' Compensation Act.

In summary, we recognize the unique nature of the workers' compensation scheme, the substantial interest of claimants at stake, and the procedural and economic differences as compared to Regulation 32 proceedings. Further, we are reluctant to construe a scheme affording special remuneration to injured police officers as foreclosing such officers' access to review in the workers' compensation system on the critical question of disability. Accordingly, we find it appropriate to allow the decision concerning earnings capacity under the Workers' Compensation Act to be made in a manner contemplated within such remedial legislation.

*Id.* at 1270–1271.

Such reasoning is equally applicable to this case because Philadelphia Civil Service Regulation 32 [8] was enacted for a similar purpose as the benefits given under Act 632.[9] The Workers' Compensation

---

8. "Philadelphia Civil Service Regulation 32.0231 represents the mechanism by which the City effectively fulfills some or all of its obligations under the Heart and Lung Act, Act of June 28, 1935, P.L. 477 §§ 1–2 (as amended 53 P.S. § 637–638) (allowing police and fire personnel to collect full salary benefits for temporary injuries sustained in the performance of their duties)." *Cohen,* 589 Pa. at 501, 909 A.2d at 1263 fn. 1.

9. *See also Cantarella* (collateral estoppel did not preclude the Department in Act 632 hearing from finding that prison employee who was rubbed on buttocks by inmate did not suffer from post-traumatic stress disorder as a result even though workers' compensation judge had earlier found otherwise); *City of Pittsburgh v. Workers' Compensation Appeal Board (McGrew),* 785 A.2d 170 (Pa.Cmwlth. 2001) (collateral estoppel did not preclude employer from arguing before workers' compensation judge that injured police officer had

Act may span a substantially longer period than under Act 632; benefits available under Regulation 32 do not apply when a claimant can no longer return to work; and the claimant's net recovery and the employer's net risk under Act 632 is substantially narrower in scope than the potential liability under the workers' compensation scheme. In particular, with regard to an employee claiming total disability, the net amounts in controversy under Act 632 proceedings are substantially lower than in a workers' compensation matter that may result in lifetime benefits. On the procedural side, the Workers' Compensation Act details extensive procedures for resolving various disputes concerning benefits, *see* 77 P.S. §§ 701–791, that are nonexistent under Act 632.

In summary, I believe *Cohen* is controlling because even though it involves Regulation 32, it is virtually the same as Act 632.[10] Necessarily then, I would echo our Supreme Court's holding in *Cohen* regarding Regulation 32 by recognizing the unique nature of the workers' compensation scheme, the substantial interest of claimants at stake, and the procedural and economic differences as compared to Act 632 proceedings. Further, we should be reluctant to construe a scheme affording special remuneration to injured correction officers as foreclosing such officers' access to review in the workers' compensation system on the critical question of disability. Accordingly, we should find it appropriate to allow the decision concerning earnings capacity under the Workers' Compensation Act to be made in a manner contemplated within such remedial legislation.

What *Cohen* and *Bortz* teach us is that for the purpose of applying preclusive effect between administrative agencies, it is not a simple matter to determine the identity of issue, because "a fact is not just a fact" but also is encompassed by who decides the fact and in what context. Every administrative agency in the Commonwealth has been entrusted by the General Assembly to administer and enforce the acts over which it gave that agency jurisdiction. That grant of power by the General Assembly envisions that each agency

---

fully recovered after Heart and Lung Act hearing previously determined that officer was ineligible for continued benefits because her injury was permanent); *Bortz v. Workmen's Compensation Appeal Board (Reznor Division of FL Industries)*, 656 A.2d 554 (Pa. Cmwlth.1995) (collateral estoppel did not preclude worker who had a work-related injury that allegedly reoccurred and was thereafter suspended for misconduct from relitigating issue in workers' compensation proceeding after unemployment compensation referee had previously found that the worker did not engage in misconduct).

**10.** "Regulation 32 implements a scheme by which the City affords wage-loss and other benefits in lieu of workers' compensation benefits for a closed period, consistent with the City's obligations under the Heart and Lung Act." *Cohen*, 909 A.2d at 1270. "Act 632 benefits are virtually identical to those afforded by the Heart and Lung Act." *Gribble v.*

*Dept. of Corrections*, 711 A.2d 593, 596 (Pa. Cmwlth.1998); *see also: Cantarella v. Department of Corrections*, 835 A.2d 870 (Pa. Cmwlth.2003). The Heart and Lung Act was intended to cover only those disabilities where the injured employee is expected to recover and return to his or her position in the foreseeable future. *City of Pittsburgh v. Workers' Compensation Appeal Board (Wiefling)*, 790 A.2d 1062, 1066 (Pa.Cmwlth.2001). The Heart and Lung Act clearly contemplates the ability of an injured employee to seek workers' compensation and benefits under the Heart and Lung Act simultaneously. *City of Erie v. Workers' Compensation Appeal Board (Annunziata)*, 575 Pa. 594, 838 A.2d 598 (2003). Although the Heart and Lung Act and the WCA are similar in purpose, the two acts operate separately from one another. *Wisniewski v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 153 Pa. Cmwlth.403, 621 A.2d 1111 (1993).

has to be able to make its own decisions based upon its own expertise. If collateral estoppel was allowed, one agency's hands would be tied by the findings and conclusions of another without being allowed to make independent findings and conclusions and applying its own expertise to the facts. Moreover, the quality of decision is different between different administrative agencies, particularly between independent agencies and departmental hearings involving their own employees. For example, under the Workers' Compensation Act, a procedure is laid out in the statute that entrusts decision making by an independent WCJ with an internal appeal to the Workers' Compensation Appeal Board, who both have an expertise in determining whether an employee is disabled and neither of which has any interest in the outcome. Compare this procedure with Act 632, a two-section statute, which contains no definitions and no procedural requirements but under the default Administrative Agency Law, allows the employer, the Secretary of the Department of Corrections, who has no expertise in the area, to determine whether the Department is required to continue making Act 632 payments. Moreover, collateral estoppel is a court created doctrine that applies to causes of action and judgments, not agency adjudications. *See Bortz, supra.*

Even if it means granting benefits to a claimant by one agency under one act when they have been denied to that same claimant by another agency under another act, it is better to have two different outcomes than to forego the rights of indepen-

dent fact finding by an administrative agency charged with doing so under the act that it has been given jurisdiction to enforce.[11]

For the foregoing reasons, I would affirm the decision of the Workers' Compensation Appeal Board and overrule prior cases holding that collateral estoppel applies between agencies.

---

11. The majority cites to examples of where agencies have applied preclusive decisions of courts as an example as to why agency decisions should have preclusive effect on other agencies. The cases the majority cite for that proposition do not involve collateral estoppel. *Bethea–Tumani v. Bureau of Professional and Occupational Affairs,* 993 A.2d 921 (Pa. Cmwlth.2010), involved a conviction that was

14 years old and showed lack of good moral character to preclude the claimant from being licensed as a nurse. *Khan v. State Bd. of Auctioneer Examiners,* 577 Pa. 166, 842 A.2d 936 (2004), was a reciprocal disciplinary action required by Auctioneer Licensing and Trading Assistant Registration Act. *See* Act of December 22, 1983, P.L. 327, 63 P.S. § 734.20(a)(11).