IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayne Merrell,                          :
                          Petitioner    :
                                        :
            v.                          :      No. 493 C.D. 2016
                                        :
Workers' Compensation Appeal            :
Board (Commonwealth of                  :
Pennsylvania Department of              :
Corrections),                           :
                          Respondent    :

# O R D E R

NOW, April 3, 2017, upon consideration of petitioner's application for reconsideration, the application is granted.

The opinion and order filed February 6, 2017, are withdrawn.

The attached opinion and order are entered.

_____
MARY HANNAH LEAVITT,
President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayne Merrell, :
                Petitioner :
    :
          v. : No. 493 C.D. 2016
    : Submitted: September 2, 2016
Workers' Compensation Appeal :
Board (Commonwealth of :
Pennsylvania Department of :
Corrections), :
              Respondent :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: April 3, 2017

Wayne Merrell (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that granted Claimant medical compensation but not disability. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ). Claimant argues that the Board erred because the WCJ was bound by the decision of the arbitrator that awarded him disability under the Heart and Lung Act[1] for the same injury. Concluding that the arbitrator's decision did not have collateral estoppel effect in the workers' compensation proceeding, we affirm.

---

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-638. The Heart and Lung Act allows police officers and other public safety employees, including corrections officers, to collect full salary benefits for temporary injuries sustained in the performance of their duties. *See* Section 1 of the Heart and Lung Act, 53 P.S. §637; *Stermel v. Workers' Compensation Appeal Board (City of Philadelphia)*, 103 A.3d 876, 877 (Pa. Cmwlth. 2014).

Claimant worked for the Department of Corrections (Employer) as a corrections officer trainee at the State Correctional Institution at Graterford. On October 12, 2013, Claimant bent his right knee in an awkward way while carrying food trays down a flight of steps, causing immediate pain. A supervisor directed Claimant to the prison's medical facility, which sent him to Pottstown Hospital. There, Claimant's leg was x-rayed, which was negative, and he was given a knee immobilizer and pain medication. Claimant returned to work to complete his shift. Two days later, Claimant saw another physician who ordered an MRI. A few weeks later, Claimant met with an orthopedic surgeon, Dr. Greene, who prescribed pain medication and suggested physical therapy. Dr. Greene released Claimant to return to work with restrictions. On November 14, 2013, Claimant returned to work but left after several days because of knee pain. Claimant returned to Dr. Greene, who again restricted him to sedentary work, which Employer did not have available.

Claimant filed a claim for benefits under the Heart and Lung Act, which was denied by Employer. Under the terms of the collective bargaining agreement between the Pennsylvania State Corrections Officer Association and Employer, an arbitrator was assigned to hear Claimant's grievance of the denial of Heart and Lung benefits. A hearing was held on January 8, 2014, at which Claimant and Employer presented evidence, in the form of depositions and exhibits.

In his deposition, Claimant described the incident of October 12, 2013, as follows:

> That morning, as I was taking breakfast trays from the inmates … I was going down the steps, I was carrying six --- five, six, seven trays. I stepped down with my right foot and as my left

2

foot came down my right knee bent sharply backwards. I was able to continue walking down the steps. From that moment on, I was having --- I had a little bit of a limp and I was in a lot of pain.

Reproduced Record at 34a (R.R. ___). Claimant continued working. When asked why he did not seek immediate medical treatment, Claimant responded:

As a trainee, I didn't want to make waves and complain. A lot of people don't like to work in the restricted housing units, and as a trainee, I didn't want to give them the illusion that I did not want to be there, that I was afraid of the inmates. I prefer to have the trust and confidence of my fellow officers.

R.R. 39a. Claimant also presented a report from Dr. Greene, his orthopedic surgeon.[2]

Employer presented the medical deposition of Dr. David Cooper, a board certified orthopedic surgeon. Dr. Cooper testified that he met with Claimant on June 2, 2014; obtained Claimant's medical history; performed a physical examination; and reviewed the results of an MRI done on October 21, 2013. Dr. Cooper opined that Claimant suffered from chronic arthritis in the right knee. He stated that the MRI did not reveal a ligament or meniscal tear that would be consistent with trauma and, thus, he could not attribute Claimant's knee pain to the October 12, 2013, work incident. Moreover, Dr. Cooper testified that assuming there was some hyperextension of the right knee caused by the work incident, it would have caused a soft tissue injury, *i.e.*, a right knee sprain. Dr. Cooper concluded that if Claimant had sprained his knee, it was fully recovered.

---

[2] The narrative report of Dr. Greene was offered into evidence in the Heart and Lung arbitration. Because Claimant did not present medical evidence to the WCJ, Dr. Greene's report is not in the record before this Court.

3

On September 24, 2014, the arbitrator issued an award granting Claimant Heart and Lung benefits. The arbitrator credited Claimant's testimony finding it was "direct, clear and forthright." Arbitration Award at 13; R.R. 131a. He specifically found that Claimant's delay in reporting his injury was not dispositive and Claimant's behavior was "a reasonable response under the circumstances." *Id.* Further, the arbitrator credited the medical opinion of Dr. Greene, explaining his reasoning as follows:

> In determining which of these clear, unequivocal competing [medical] opinions to rely on I find most compelling the fact that [Claimant], who was thirty five years old at the time of the October 12, 2013 injury, had never experienced any prior knee problems. Dr. Greene likewise found this critical to his opinion. If, as Dr. Cooper opines, [Claimant's] pain is now solely the result of degenerative conditions in his knee, he would have had other indications of these conditions before this injury. I cannot disregard the fact that, all of [Claimant's] knee problems began after the work injury. Therefore, also mindful that I can give deference to the treating physician's opinion, I credit the opinion of Dr. Greene.

Arbitration Award at 15; R.R. 133a.

On April 28, 2014, Claimant filed a claim petition under the Workers' Compensation Act,[3] alleging his right knee hyperextension and medial compartment arthrosis were caused by the work incident on October 12, 2013, and left him unable to work. He sought disability benefits as of October 29, 2013, and ongoing. Employer filed an answer, denying all material allegations.

At the hearing before the WCJ, Claimant moved for an award of disability compensation based upon the arbitrator's award of Heart and Lung

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

4

benefits. Claimant argued that the arbitrator's award was binding on the WCJ under the doctrine of collateral estoppel. Claimant offered the arbitrator's award and Claimant's deposition from the arbitration, but he did not offer any medical evidence. Employer disputed the application of collateral estoppel. It presented the medical deposition testimony of Dr. David Cooper that it had offered in the Heart and Lung arbitration.

The WCJ denied Claimant's motion for an award of disability benefits, holding that she was not collaterally estopped by the arbitration award. The WCJ found that Claimant sustained a work injury on October 12, 2013, but he did not prove a wage loss caused by the work injury. The WCJ granted Claimant's claim petition for medical benefits from October 12, 2013, up to June 2, 2014; he denied disability benefits. Claimant appealed to the Board.

On appeal to the Board, Claimant argued that the arbitration award resolved the issue of his disability and is binding in the workers' compensation proceeding. The Board rejected this argument. The Board reasoned that "the instant workers' compensation case dealt with a potentially indefinite period of disability and was a more formal setting than the previous Heart and Lung arbitration[, t]hus … the stakes were lower in the previous proceedings and could not have a preclusive effect." Board Adjudication at 3. Claimant now petitions this Court for review.[4]

---

[4] In an appeal of an order of the Board, this Court's "review is limited to determining whether constitutional rights have been violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence." *Verbilla v. Workmen's Compensation Appeal Board (Schuylkill Nursing Association)*, 668 A.2d 601, 603 n.2 (Pa. Cmwlth. 1995).

Before this Court, Claimant argues that the arbitrator's finding that he was temporarily disabled and, thus, entitled to Heart and Lung benefits precluded the WCJ from finding that Claimant was not entitled to disability benefits under the Workers' Compensation Act when the Heart and Lung benefits ended.

Collateral estoppel, also known as issue preclusion, prevents relitigation of questions of law or issues of fact that have already been litigated in a court of competent jurisdiction. *Department of Corrections v. Workers' Compensation Appeal Board (Wagner-Stover)*, 6 A.3d 603, 608 (Pa. Cmwlth. 2010). The doctrine of collateral estoppel is based on the policy that a losing litigant does not deserve a rematch after fairly suffering a loss in adversarial proceedings on an issue identical in substance to the one he subsequently seeks to raise. *Id.* (quoting *McGill v. Southwark Realty Co.,* 828 A.2d 430, 434 (Pa. Cmwlth. 2003)).

Collateral estoppel will foreclose relitigation of issues of fact or law in subsequent actions where the following criteria are met: (1) the issue in the prior adjudication is identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; (4) the party against whom collateral estoppel is asserted has had a full and fair opportunity to litigate the issue in the prior action; and (5) the determination in the prior proceeding was essential to the judgment. *Id.* at 608-09.

Claimant asserts all five elements have been satisfied here. Employer agrees that this is true for four elements. However, it argues that it did not have a full and fair opportunity to litigate the issue of disability in the Heart and Lung

6

arbitration and, thus, the arbitration award cannot have preclusive effect in the workers' compensation claim proceeding.

In short, the sole issue is whether Employer had a full and fair opportunity to litigate the extent of Claimant's disability. Both parties cite to identical case law, albeit to support their opposite positions. We begin, accordingly, with a review of the relevant precedent.

In *Cohen v. Workers' Compensation Appeal Board (City of Philadelphia)*, 909 A.2d 1261 (Pa. 2006), our Supreme Court held that a city civil service commission's determination in a Regulation 32[5] proceeding did not have a preclusive effect on a subsequent workers' compensation proceeding. The Supreme Court held that the civil service commission's determination that an officer was capable of returning to work did not preclude the WCJ from granting workers' compensation benefits. In reaching that conclusion, the Supreme Court considered, first, the amount in controversy in each proceeding and, second, the procedures that governed each hearing.

Regulation 32 provides an injured police officer with full salary, but only for one year, subject to an extension by the City for a period of up to three years. *Id.* at 1270. In contrast, workers' compensation benefits are not as generous but potentially infinite in duration. *Id.* The Supreme Court concluded, therefore, that the amount in controversy under Regulation 32 was substantially less than the amount at risk under the Workers' Compensation Act.

---

[5] Under Philadelphia Civil Service Regulation 32, a police officer who is injured on duty may be entitled to collect his full salary during a defined period of disability in lieu of workers' compensation benefits. PHILA. CIV. SERV. REG. 32.0231, 32.09. Regulation 32 is the mechanism by which the City fulfills some or all of its obligations under the Heart and Lung Act, 53 P.S §§637-638. *See Cohen*, 909 A.2d at 1262 n.1.

The Supreme Court next compared the procedures followed in each proceeding. The Court observed that the Workers' Compensation Act has established extensive and detailed procedures for the resolution of disputes, but the Regulation 32 procedures appeared to be more "*ad hoc.*" *Id.* Given these differences, and the unique nature of the workers' compensation scheme, the Supreme Court held that the WCJ was not precluded by the Regulation 32 award from making her own determination on the claimant's petition for workers' compensation benefits.

Thereafter, in *Wagner-Stover*, 6 A.3d 603, this Court considered whether an award of benefits to an injured corrections officer under Act 632[6] has a preclusive effect on a subsequent workers' compensation proceeding. In that case, the Act 632 proceeding resulted in a finding that the claimant had fully recovered from her work-related injury. The Department of Corrections argued that this adjudication collaterally estopped the WCJ from finding that the claimant had not fully recovered. The claimant rejoined that collateral estoppel was inapplicable because claimant did not have a full and fair opportunity to litigate the issue of her full recovery in the Act 632 proceeding.[7]

---

[6] Act of December 8, 1959, P.L. 1718, No. 632, *as amended*, formerly 61 P.S. §§951-952 (repealed when codified at 61 Pa. C.S. §1101). Act 632 provided payment of full salary to any employee of a state penal or correctional institution who was injured during the course of his employment by an act of any inmate. Former Section 1 of Act 632, formerly 61 P.S. §951; *see* 61 Pa. C.S. §1101.

[7] The claimant also argued that the issues in each proceeding were different. In addressing the identity of the issues, we held that the dispositive factual question—whether the claimant had fully recovered from her disability—was identical in both proceedings. We reasoned that "a fact is a fact, regardless of public policy." *Wagner-Stover*, 6 A.3d at 612 (quoting *Rue v. K-Mart Corp.*, 713 A.2d 82, 85 (Pa. 1998)). Accordingly, because proof of the claimant's full recovery proved the end of her work-related disability for purposes of either statute, we found that this element of collateral estoppel was met.

**(Footnote continued on the next page . . .)**

We rejected this contention. In so holding, we turned to the *Cohen* framework, which "requires two inquiries: the amount at risk financially and the type of procedural rules governing each proceeding." *Id.* at 613.

Benefits under Act 632 equal the full salary of the injured worker. By contrast, workers' compensation benefits are limited to two-thirds of the claimant's average weekly wage. However, both compensation schemes have a potentially lifetime duration. We concluded that under both Act 632 and the Workers' Compensation Act, "the amount in controversy is comparable: potentially lifetime compensation for lost wages caused by a work injury." *Id.*

We next compared the procedures that govern Act 632 and workers' compensation proceedings. Act 632 proceedings are governed by the General Rules of Administrative Practice and Procedure;[8] workers' compensation proceedings are governed by special rules adopted by the Department of Labor and Industry.[9] The claimant argued that because the workers' compensation system is unique, a WCJ can never be bound by the findings of another agency's adjudication. We rejected this broad proposition. The procedures under Act 632 were found comparable to those that govern workers' compensation proceedings; if anything, the procedures under Act 632 were more extensive. *Id.* at 616. We concluded that the claimant had a full and fair opportunity to litigate the question of whether she had recovered from her work injury in the Act 632 proceeding.

**(continued . . .)**

Here, there is no dispute that the issue of disability in both the Heart and Lung Act and Workers' Compensation Act is identical. *See Kohut v. Workers' Compensation Appeal Board (Township of Forward)*, 621 A.2d 1101, 1104 (Pa. Cmwlth. 1993) (finding that disability has the same meaning under the Heart and Lung Act and the Workers' Compensation Act).

[8] 1 Pa. Code Part II, §§31.1-35.251.

[9] 34 Pa. Code §§121.1-131.204.

Accordingly, we held that the Act 632 adjudication, which found claimant fully recovered from her work-related injury, collaterally estopped the WCJ from making a different determination in a claim proceeding. *Id.*

*Cohen* and *Wagner-Stover* teach that to employ the precept of collateral estoppel in a workers' compensation proceeding, there must be a two-part inquiry into the amount at risk and the governing procedure. Here, we compare the benefits and procedures under the Heart and Lung Act to those provided under the Workers' Compensation Act.[10]

Beginning with the amount of benefits at stake, Claimant argues that the Heart and Lung Act and the Workers' Compensation Act are substantially similar. Claimant notes that the Regulation 32 benefits in *Cohen* only fulfilled some of the City's obligations under the Heart and Lung Act; in this case, by contrast, Employer was litigating its full obligation under the Heart and Lung Act. Further, Regulation 32 provides benefits for one to three years, but there is no such limit in the Heart and Lung Act. Finally, Claimant notes that the Heart and Lung Act grants benefits equal to full compensation, which is more generous than the Workers' Compensation Act.

Employer focuses on duration of benefits under the Heart and Lung Act and the Workers' Compensation Act, which are different. Heart and Lung Act benefits are "temporary," whereas compensation benefits cover permanent injuries that can last a lifetime. Claimant rejoins that because there is no specific time limit in the Heart and Lung Act, it provides benefits for an indefinite period of time, just

---

[10] Because the full and fair opportunity to litigate factor is the only collateral estoppel element at issue, this question is dispositive in our determination as to whether the Heart and Lung adjudication's findings as to disability collaterally estopped the WCJ from making her own disability determination.

10

as the Workers' Compensation Act does. We disagree. Heart and Lung benefits cease when the claimant's disability is determined to be permanent. *Gwinn v. Pennsylvania State Police*, 668 A.2d 611, 613 (Pa. Cmwlth. 1995). This renders it exactly opposite the Workers' Compensation Act, which can provide benefits for a lifetime where the disability is determined to be permanent.

Employer argues that *Wagner-Stover* is distinguishable because in that case both compensation schemes offered potential lifetime benefits, as opposed to here, where Heart and Lung benefits are temporary. Heart and Lung benefits are more generous on a weekly basis than are compensation benefits. However, this was also the case for Regulation 32 benefits, which were temporary. Employer argues that the stakes in a Heart and Lung proceeding are much lower because the benefits are temporary. In support, Employer cites to this Court's unreported opinion in *City of Philadelphia v. Workers' Compensation Appeal Board (Porter)*, (Pa. Cmwlth. No. 2193 C.D. 2011, filed July 9, 2012).

In *Porter*, this Court addressed the identical issue raised here: whether an award of benefits under the Heart and Lung Act has preclusive effect on a subsequent workers' compensation proceeding. We concluded that it did not because of the differences in the amount in controversy. Specifically, we explained the most important factor to examine is the potential duration of the benefits. *Porter*, Slip. op. at 8. Benefits under the Heart and Lung Act are temporary, *i.e.*, until the claimant returns to work or is found to be permanently disabled, but benefits under the Workers' Compensation Act may last a claimant's lifetime.[11] *Id.* at 7.

---

[11] *See also Gwinn*, 668 A.2d at 613 ("Heart and Lung Act benefits can be terminated when: (1) the claimant is able to return to work because his disability ceases; or (2) the claimant's disability **(Footnote continued on the next page . . .)**

11

We find the analysis in *Porter* persuasive here.[12] The temporary nature of Heart and Lung benefits, as opposed to potential lifetime benefits under the Workers' Compensation the Act, renders the amount in controversy between the two schemes incomparable.

As directed by *Cohen*, 909 A.2d 1261, we next compare the procedures governing the benefit schemes in this case. Here, the arbitration was governed by the terms of the collective bargaining agreement (CBA) between the Pennsylvania State Corrections Officers Association and the Commonwealth.[13] Arbitration Award at 2; R.R. 120a. Claimant's workers' compensation proceeding was governed by the procedures set forth in the Workers' Compensation Act. *See* Sections 401 – 424 of the Workers' Compensation Act, 77 P.S. §§701-791. To ensure that each party has the opportunity to litigate fully and fairly for purposes of the collateral estopped analysis, "each proceeding [must be] sufficiently formal to allow each litigant to develop a complete record on a disputed fact." *Wagner-Stover*, 6 A.3d at 616.

---

**(continued . . .)**

is determined to be permanent as opposed to only temporary."). In contrast, Section 413 of the Workers' Compensation Act provides that workers' compensation benefits are paid until the claimant's work-related disability has ended, which can last for a claimant's lifetime. 77 P.S. §772. *See also* Section 306(a) of the Workers' Compensation Act, 77 P.S. §511.

[12] "An unreported opinion of [Commonwealth Court] may be cited and relied upon when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel." 210 Pa. Code §3716(c). Parties may also cite an unreported panel decision of this Court issued after January 15, 2008, for its persuasive value, but not as binding precedent. 210 Pa. Code §3716(b).

[13] The CBA between the Pennsylvania State Corrections Officers Association and the Commonwealth is not included in the record. It can be found on the PSCOA website, available at http://www.pscoa.org/wp-content/uploads/2015/08/CBA-PSCOA-2014-2017.pdf (appendix I) (last visited January 20, 2017).

Both the Workers' Compensation Act and the CBA require a claimant to give notice to Employer within 21 days after the injury occurs. Section 311 of the Workers' Compensation Act, 77 P.S. §631; CBA Art. I, Section 3(a). Both require Employer to issue a determination approving or denying the claim within 21 days. 34 Pa. Code §§121.7, 121.7a, 121.13; CBA Art. I, Section 3(d). Both proceedings include the power to issue subpoenas.[14] These superficial similarities do not make the arbitration procedures "sufficiently formal" to satisfy *Wagner-Stover*.

Workers' compensation is highly regulated. The work injury must be identified on a Notice of Compensation Payable filed with the Department of Labor and Industry, where the employer accepts the injury. Section 407 of the Workers' Compensation Act, 77 P.S. §731; 34 Pa. Code §121.7. Where the

---

[14] Section 436 of the Workers' Compensation Act provides:

> The secretary, any referee, and any member of the board shall have the power to issue subpoenas to require the attendance of witnesses and/or the production of books, documents, and papers pertinent to any hearing. Any witness who refuses to obey such summons or subpoenas, or who refuses to be sworn or affirmed to testify, or who is guilty of any contempt after notice to appear, may be punished as for contempt of court, and, for this purpose, an application may be made to any court of common pleas within whose territorial jurisdiction the offense was committed, for which purpose such court is hereby given jurisdiction.

77 P.S. §992. Similarly, Section 4 of Article III of the CBA provides:

> (a) A party in interest in any proceeding under this Agreement may request that the Arbitrator assigned to hear the claims issue a subpoena to compel the attendance of a witness or require the production of any documents, records, or items relevant to the proceeding at a scheduled hearing or deposition.

> (b) The Arbitrator may, upon the filing of written objections by any person served with a subpoena or any party in interest, and upon due notice to all parties in interest and an opportunity to be heard, quash or limit the scope of any subpoena issued or served.

CBA Art. III, Section 4.

employer denies the reported injury, it must file a Notice of Claim Denial. 34 Pa. Code §121.13. These filings become the basis of any subsequent ruling by the WCJ, such as a grant, modification, suspension or termination of benefits. Section 408 of the Workers' Compensation Act, 77 P.S. §732. The amount of the attorney's compensation and whether the employer's contest is reasonable are regulated. Sections 440 and 442 of the Workers' Compensation Act, 77 P.S. §§996, 998.[15] None of this detail is provided in the CBA.

Most critical in a disputed workers' compensation claim is medical evidence on causation, which must be sufficiently definite to render it admissible. *Cerro Metal Products Co. v. Workers' Compensation Appeal Board* (*PLEWA*), 855 A.2d 932, 937 (Pa. Cmwlth. 2004). "[M]edical evidence is unequivocal as long as the medical expert, after providing a foundation, testifies that in his professional opinion he believes or thinks the facts exist." *Id.* By contrast, the CBA is devoid of standards regarding the foundation to a medical opinion on causation.

Perhaps most importantly, Section 422(a) of the Act requires the WCJ to issue a reasoned decision. It states, in relevant part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted

---

[15] Added by Section 3 of Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. §§996, 998.

evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834. "This is to ensure that 'a legally erroneous basis for a finding will not lie undiscovered' but, rather, 'such legal error will be evident and can be corrected on appeal.'" *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services)*, 126 A.3d 394, 402 (Pa. Cmwlth. 2015) (quoting *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchinson)*, 717 A.2d 1086, 1088-89 (Pa. Cmwlth. 1998)).

The CBA requires that the arbitrator's decision meet the following standards:

> Following the conclusion of the case, the Arbitrator shall issue a written decision and supporting opinion as expeditiously as possible. It shall contain findings of fact, conclusions of law, and an appropriate order based upon such record as may be proper under the circumstances. The Arbitrator shall provide reasons for any credibility findings or rulings.

CBA Art. IV, Section 3(a).[16] However, the CBA does not require the level of reasoning and explanation mandated in the Workers' Compensation Act.

We conclude that an arbitration proceeding is more *ad hoc* and informal than a proceeding governed by the Workers' Compensation Act. This is most notable with regard to the standards for the admission of medical evidence and the level of detail required in a WCJ's decision.

---

[16] Sections 507 and 555 of the Administrative Agency Law set forth the content requirements for local and state agency adjudications. The content requirement states that all adjudications "shall contain findings and the reasons for the adjudication." 2 Pa. C.S. §§507, 555.

We conclude that an arbitration and a workers' compensation proceeding are substantially different. Consistent with *Cohen*, 909 A.2d 1261, we conclude that issue preclusion is not appropriate here because Employer "did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Rue v. K-Mart Corp.,* 713 A.2d 82, 86 (Pa. 1998).

For these reasons, we hold that the arbitrator's award of Heart and Lung benefits did not collaterally estop the WCJ from making her own determination as to Claimant's disability. We affirm the order of the Board.

_____
MARY HANNAH LEAVITT, President Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayne Merrell,               :
             Petitioner      :
                          :
            v.                :    No. 493 C.D. 2016
                          :
Workers' Compensation Appeal   :
Board (Commonwealth of        :
Pennsylvania Department of      :
Corrections),                 :
            Respondent    :

# **O R D E R**

AND NOW, this 3rd day of April, 2017, the order of the Workers' Compensation Appeal Board dated March 15, 2016, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge