IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,        :
                                  :
              Appellant   :
                                  :
                  v.             : No. 1928 C.D. 2016
                                  : Argued:  May 3, 2017
John Hargraves, III          :
Wayne Frazier              :
Jacklyn Campbell          :
James Campbell            :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROBERT SIMPSON, Judge[1]
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                            FILED:  February 28, 2018

The City of Philadelphia (City) appeals the August 15, 2016 order of the Court of Common Pleas of Philadelphia County (trial court), holding that the City is not entitled to subrogation of Heart and Lung Act[2] benefits paid to City police officers John Hargraves, III, and Wayne Frazier from any settlement or award they recover in a pending third-party tort action.[3]  The City argues that, together, the 1990 amendments

---

[1] This case was argued before an *en banc* panel of the Court that included former Judge Julia K. Hearthway.  Because Judge Hearthway's service on the Court ended September 1, 2017, this matter was submitted on briefs to Judge Simpson as a member of the panel.

[2] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-638.

[3] The appeal was transferred to this Court by the Superior Court's October 3, 2016 order.

to the Motor Vehicle Financial Responsibility Law (MVFRL)[4] and Section 25(b) of Act 44 of 1993[5] restore an employer's common-law right to subrogation for Heart and Lung Act benefits paid to employees for injuries arising out of the use and/or maintenance of an automobile. The City also argues that it has a statutory right of subrogation pursuant to Section 319 of the Workers' Compensation Act.[6] We affirm.

Officers Hargraves and Frazier were injured, while on duty, in an automobile accident with a vehicle owned by James Campbell and driven by Jacklyn Campbell. Both officers received benefits under the Heart and Lung Act.[7] The City,

---

[4] 75 Pa. C.S. §§1701-1799.7.

[5] Act of July 2, 1993, P.L. No. 44. Act 44 amended the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708, "by implementing major changes concerning, *inter alia*, payment of medical bills, insurance ratemaking, self-insurance pooling and insurance fraud." *Stermel v. Workers' Compensation Appeal Board (City of Philadelphia)*, 103 A.3d 876, 879 n.7 (Pa. Cmwlth. 2014).

[6] 77 P.S. §671.

[7] In relevant part, Section 1(a) of the Heart and Lung Act provides that

> any policeman . . . of any county, city, borough, town or township . . . who is injured in the performance of his duties . . . and by reason thereof is temporarily incapacitated from performing his duties, shall be paid . . . by the county, township or municipality, by which he is employed, his full rate of salary . . . until the disability arising therefrom has ceased. All medical and hospital bills, incurred in connection with any such injury, shall be paid . . . by such county, city, township or municipality. During the time salary for temporary incapacity shall be paid by the . . . city . . . any workmen's compensation, received or collected by any such employee for such period, shall be turned over to [the city] and paid into the treasury thereof . . . .

53 P.S. §637(a).

which is self-insured for workers' compensation, issued a Notice of Compensation Payable (NCP) to Hargraves on March 1, 2012, and to Frazier on March 7, 2012.[8] Each NCP sets forth the employee's average weekly wage and weekly compensation rate and states that the employee will receive benefits under the Heart and Lung Act "in lieu of" workers' compensation benefits. Reproduced Record (R.R.) at 28a-29a, 31a-32a.

As a result of his injuries, Frazier was disabled and unable to work as a City police officer from February 17, 2012, through April 4, 2013. The City paid Frazier $78,987.97 in salary continuation benefits and $30,552.82 in medical benefits under the Heart and Lung Act. R.R. at 8a. Due to restrictions necessitated by his injuries, Hargraves worked modified duty from February 17, 2012 through March 28, 2012. Although he suffered no wage loss, he was eligible for benefits under the Heart and Lung Act, and the City paid Hargraves $7,015.68 in medical benefits.

On January 31, 2014, the officers commenced a civil action, *Hargraves and Frazier v. Campbell*, January Term 2014, No. 3312, seeking damages against Jacklyn and James Campbell for personal injuries they allegedly sustained in the motor vehicle accident. The City issued subrogation lien letters to Hargraves and Frazier, and the Campbells subsequently filed a motion *in limine* in the underlying third-party

---

[8] As we recently observed in *Merrell v. Workers' Compensation Appeal Board (Department of Corrections),* 158 A.3d 242 (Pa. Cmwlth. 2017):

> Workers' compensation is highly regulated. The work injury must be identified on a Notice of Compensation Payable filed with the Department of Labor and Industry, where the employer accepts the injury. Where the employer denies the reported injury, it must file a Notice of Claim Denial. These filings become the basis of any subsequent ruling by the [workers' compensation judge], such as a grant, modification, suspension or termination of benefits.

*Id.* at 249 (citations omitted).

3

action, seeking to preclude Frazier from introducing evidence or testimony of Heart and Lung Act benefits paid by the City and arguing that the City was not entitled to subrogation against Frazier's third-party recovery. A decision in the underlying tort action was stayed pending a decision on whether the City may subrogate Heart and Lung Act benefits paid to Frazier and Hargraves. That is the only disputed issue in this appeal, and the parties agree as to all relevant facts.

Before the trial court, the City argued that the 1990 amendments to the MVFRL restored an employer's common law right to subrogation for Heart and Lung Act benefits paid to eligible employees for injuries arising from the use and/or maintenance of an automobile. The City also asserted that it has a statutory right to subrogation under Section 319 of the Workers' Compensation Act.[9] The trial court rejected both arguments, relying on *Oliver v. City of Pittsburgh*, 11 A.3d 960 (Pa. 2011), and *Stermel v. Workers' Compensation Appeal Board (City of Philadelphia)*, 103 A.3d 876 (Pa. Cmwlth. 2014).

The Workers' Compensation Act provides compensation to injured employees for medical expenses and lost wages in the amount of two-thirds of the employee's actual lost earnings.[10] All employers, public and private, are subject to the requirements of the Workers' Compensation Act. The Heart and Lung Act provides full salary continuation benefits to police officers and other public safety employees who are injured in the performance of their duties and are temporarily unable to perform those duties. The more favorable wage loss benefit in the Heart and Lung Act enables public employers to "attract employees to and keep them in the essential and

---

[9] 77 P.S. §671. The City asserts that of the $78,987.97 in Heart and Lung Act salary continuation benefits paid to Frazier, $50,119.91 was paid pursuant to the NCP as required by the Workers' Compensation Act. The City also asserts that the NCP issued to Hargraves obligated the City to pay medical expenses for treatment related to his work injuries.

[10] Sections 306(a) and 306(b) of the Workers' Compensation Acct, 77 P.S. §§511, 512.

4

dangerous jobs." *McWreath v. Department of Public Welfare*, 26 A.3d 1251, 1255 (Pa. Cmwlth. 2011).

Public safety employees who are receiving Heart and Lung Act benefits also are entitled to receive benefits under the Workers' Compensation Act. However, those employees are required by Section 1(a) of the Heart and Lung Act to return the workers' compensation benefits they receive to the public employer, payable into its treasury. Self-insured public employers that pay Heart and Lung benefits do not *tender* workers' compensation payments that are owed because they would simply be returned. Nevertheless, self-insured employers paying Heart and Lung benefits typically issue an NCP, thereby acknowledging the work injury and the employer's concurrent obligations under the Workers' Compensation Act.

Where a compensable work injury has been caused by a third party, Section 319 of the Workers' Compensation Act provides the employer a right of subrogation against the employee's tort recovery.[11]

---

[11] Section 319 of the Workers' Compensation Act states:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, *the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer*; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe .... The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe ... and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

77 P.S. §671 (emphasis added).

5

> The policy behind subrogation is threefold: First, it prevents double recovery for the same injury by the claimant. Second, it prevents the employer from having to make compensation payments which resulted from the negligence of a third party. Finally, it prevents a third party from escaping liability for his negligence.

*Stermel,* 103 A.3d at 878 (quoting *Murphy v. Workers' Compensation Appeal Board (City of Philadelphia)*, 871 A.2d 312, 317 (Pa. Cmwlth. 2005)). The Heart and Lung Act contains no such provision, but it has been construed as giving the employer the right to subrogate. *Topelski v. Universal South Side Autos, Inc.*, 180 A.2d 414, 420 (Pa. 1962); *Fulmer v. Pennsylvania State Police*, 647 A.2d 616, 619 (Pa. Cmwlth. 1994).

In 1984, the legislature enacted the MVFRL, and in doing so abolished the employer's ability under Section 319 of the Workers' Compensation Act to subrogate workers' compensation payments against a claimant's third-party recovery in tort claims arising from the use or maintenance of a motor vehicle. Section 1720 of the MVFRL states:

> In actions arising out of the maintenance or use of a motor vehicle, *there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits*, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or *benefits paid or payable by a program, group contract or other arrangement whether primary or excess* under section 1719 (relating to coordination of benefits).

75 Pa. C.S. §1720 (emphasis added).

The language "benefits paid or payable by a program, group contract or other arrangement whether primary or excess" was added to Section 1720 in a 1990 amendment, which previously read "workers' compensation benefits . . . or benefits in

lieu thereof paid or payable." In *Fulmer*, this Court interpreted both versions of Section 1720 to designate Heart and Lung Act benefits as a type of benefit that is not eligible for subrogation where the injury arises from a motor vehicle accident. *Fulmer,* 647 A.2d at 618-19.

In *Fulmer*, the Court also observed that Section 1722 of the MVFRL appears to prevent the possibility that a workers' compensation claimant would be entitled to receive duplicate lost wages and medical expenses through a tort action. It states:

> In any action for damages against a tortfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719.

75 Pa. C.S. §1722. Thus, prior to the 1993 amendments to the Workers' Compensation Act (Act 44), in an action arising from the use or maintenance of motor vehicles, a workers' compensation claimant was prohibited from recovering workers' compensation benefits from a third party, and the employer/insurer was not entitled to subrogation of workers' compensation benefits paid or payable. 75 Pa. C.S. §§1720, 1722.

In 1993, Section 25(b) of Act 44 restored the employer's right of subrogation for workers' compensation benefits paid to a claimant whose work injury resulted from an automobile accident:

The provisions of 75 Pa. C.S §§1720 and 1722 are repealed insofar as they relate to workers' compensation payments or other benefits under the Workers' Compensation Act.

In 2011, our Supreme Court held in *Oliver* that Section 25(b) of Act 44 restored an employer's right of subrogation for workers' compensation payments, but not Heart and Lung Act benefits. The court first noted that the statutory language was "unambiguous in its straightforward application to [workers' compensation benefits]." 11 A.3d at 965. The court further noted that

> the MVFRL's remedial scheme has become increasingly complicated, in light of the need to address premium costs while maintaining financial viability in the insurance industry. The Legislature has made numerous specific refinements impacting the competing, and legitimate, rights and interests of insurers, employers, and injured persons. In this landscape, where there are mixed policy considerations involved, we decline to extend clear and specific refinements beyond their plain terms. . . .
>
> The [Heart and Lung Act] applies to protect employees serving the public in essential, high-risk professions. The design is to ensure that, if they are temporarily disabled in the performance of their duties, these critical-services personnel do not suffer salary losses or incur the expense of medical care and treatment. *See* 53 P.S. §637(a); *see, e.g.*, *City of Erie* [*v. Workers' Compensation Appeal Board (Annunziata)*, 838 A.2d 598, 603-04 & n.6 (Pa. 2003)] (discussing the statutory framework of the [Heart and Lung Act]). Although the [Workers' Compensation Act] also embodies a similar remedial scheme, the [Heart and Lung Act's] more favorable treatment of public-safety employees who are temporarily disabled suggests against treating an overlap as an equivalency.

11 A.3d at 966.

The court in *Oliver* did not address the issue of whether the 1990 amendments to the MVFRL restored an employer's right to subrogation for Heart and

Lung Act benefits paid. However, the court referenced this Court's decision in *Fulmer*, stating that "In [*Fulmer*], the Commonwealth Court ruled that the '*benefits in lieu thereof*' language reposited in the MVFRL subsumed the more favorable benefits afforded to temporarily disabled law enforcement officers and firefighters pursuant to the Heart and Lung Act." *Oliver*, 11 A.3d at 962 (emphasis added). The Supreme Court did not elaborate, and the language in *Fulmer* addressing the *amended* version of the statute remained dicta.

Thereafter, in *Stermel*, this Court relied in part on *Fulmer* to reverse the Workers' Compensation Appeal Board's (Board) determination that a portion of the Heart and Lung Act benefits paid by the employer were actually workers' compensation benefits and could be recovered from a claimant's third party settlement. "This Court *has interpreted both versions* of Section 1720 to designate Heart and Lung benefits as a type of benefit not eligible for subrogation where the injury arises from a motor vehicle accident." 103 A.3d at 879 (emphasis added) (citing *Fulmer*, 647 A.2d at 618-19).

In *Stermel*, a police officer missed 21 weeks of work due to injuries sustained in a motor vehicle accident while on duty. The employer issued a NCP that accepted liability and also stated that the employer was paying the officer Heart and Lung Act benefits. The NCP stated that the officer was receiving salary continuation under the Heart and Lung Act in lieu of workers' compensation benefits. The officer returned to work with no wage loss, and payment of his Heart and Lung Act benefits ceased.

Subsequently, the officer recovered $100,000.00 in a third-party tort action. The employer filed a workers' compensation petition to review compensation benefit offset, seeking subrogation against the officer-claimant's third party recovery.

9

The employer asserted a subrogation lien for medical bills it had paid in the amount of $7,244.37 and for wage loss payments in the amount of $20,498.96. The officer-claimant filed an answer arguing in part that Heart and Lung benefits are not subject to subrogation under Section 25(b) of Act 44.

The Board determined that two-thirds of the Heart and Lung benefits paid by the employer, which was self-insured, represented workers' compensation benefits, and consequently, the employer was entitled to the right of subrogation provided in Section 319 of the Act. The Board explained that if the employer had not been self-insured, its workers' compensation insurance carrier would have made workers' compensation payments to the employee, the employee would have returned those payments to the employer, and the employer's *workers' compensation insurer* would be eligible for subrogation against the tortfeasor responsible for the employee's injury. The Board concluded that a self-insured public employer's right of subrogation should not be less than that of an insured public employer.

On appeal to this Court, we relied on *Oliver* and held that Section 25(b) of Act 44 did not implicate rights to subrogation under the Heart and Lung Act. In doing so, we acknowledged our prior decisions in *Wisniweski*[12] and *Excalibur Insurance*.[13] However, we distinguished those cases:

> *Wisniweski* and *Excalibur Insurance* were not subrogation
> cases. *Wisniewski* terminated the employer's liability for

---

[12] *Wisiniewski v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 621 A.2d 1111, 1113 (Pa. Cmwlth. 1993) (stating that when a self-insured employer pays Heart and Lung Act benefits, two-thirds of those payments represent workers' compensation benefits).

[13] *Bureau of Workers' Compensation v. Workers' Compensation Appeal Board (Excalibur Insurance Management Service)*, 32 A.3d 291, 295 (Pa. Cmwlth. 2011) (self-insured employer is entitled to reimbursement from the supersedeas fund for the portion of Heart and Lung Act benefits paid in lieu of workers' compensation benefits).

10

workers' compensation, but it also held that the employer had to pay the claimant full Heart and Lung benefits unless and until those benefits were terminated in another proceeding. Stated otherwise, *Wisniewski* expressly *acknowledged that Heart and Lung benefits and workers' compensation benefits are subject to different statutory regimes*. *Excalibur Insurance* dealt with the employer's right to recoup from the supersedeas fund. In both cases, the Court decided the issues solely under the Workers' Compensation Act. In neither case was the Motor Vehicle Financial Responsibility Law implicated.

*Stermel*, 103 A.3d at 884-85 (emphasis added). Relying on *Fulmer*, we reasoned that the language of Section 1720 of the MVFRL has been construed to include Heart and Lung Act benefits, so that a claimant is precluded from recovering the benefits paid under the Heart and Lung Act from a third party, and there can be no subrogation out of an award that does not include these benefits. 103 A.3d at 885. We characterized the Board's determination that two-thirds of the Heart and Lung benefits paid by the self-insured employer represented workers' compensation benefits as improperly "[extending] the legislature's 'specific requirements beyond their plain terms.'" *Stermel,* 103 A.3d at 886 (quoting *Oliver*, 11 A.3d at 966).

In *Pennsylvania State Police v. Workers' Compensation Appeal Board (Bushta)*, 149 A.3d 118 (Pa. Cmwlth. 2016), *appeal granted* ___ A.3d ___, (Pa., No. 483 WAL 2016, filed April 18, 2017), this Court relied on *Stermel* and rejected the employer's argument that Heart and Lung Act benefits were subject to subrogation because they were, in fact, workers' compensation benefits. We reaffirmed these holdings in *City of Philadelphia v. Zampogna*, ___ A.3d ___ (Pa. Cmwlth., No. 94 C.D. 2017, filed December 27, 2017). These prior decisions compel us to reach the same

result in this case.[14]

[14] Pennsylvania courts have repeatedly recognized that the Heart and Lung Act and the Workers' Compensation Act are separate statutory schemes. In *City of Erie v. Workers' Compensation Appeal Board (Annunziata)*, 838 A.2d 598 (Pa. 2003), the Supreme Court noted that neither the Workers' Compensation Act nor the Heart and Lung Act relieves an employer of its obligation to pay workers' compensation benefits while the employer is providing benefits under the Heart and Lung Act.

> While the effect of this dichotomy may ultimately be rendered hollow by the set-off, as discussed below, nonetheless *the Heart and Lung Act does not relieve the employer from its* "*continuing obligations* to pay workers' compensation benefits for the work injury . . . .*" City of Erie* [*v. Workers' Compensation Appeal Board (Annunziata)*, 799 A.2d 946, 952 (Pa. Cmwlth. 2002)]. Likewise, nothing in the Workers' Compensation Act eliminates the responsibility of an employer to pay workers' compensation to an injured employee who is receiving Heart and Lung benefits.

> We agree with the Commonwealth Court that the employer's obligation to pay Heart and Lung benefits "is **concurrent with**, not in lieu of, its obligation" pursuant to the workers' compensation scheme. Id. (emphasis in original).

838 A.2d at 604-605 (emphasis in italics added, bold in original). The court added the following:

> Nevertheless, in circumstances where the employer is self-insured, it would be an exercise in futility to mandate that the employer pay benefits to the claimant and then require the claimant to turn around and remit them back to the employer. To avoid this absurdity, in such a situation, *it would be proper for the employer to issue a revised NCP and refuse to pay benefits*.

*Id.* at 605 n.7 (emphasis added).

In sum, our courts have recognized that: (1) Section 25(b) of Act 44 did not restore subrogation rights for benefits paid under the Heart and Lung Act, *Stermel*; (2) Heart and Lung benefits are not paid "in lieu of" workers' compensation benefits due, *City of Erie,* 838 A.2d at 604-605; (3) the obligations imposed by the Heart and Lung Act and the Workers' Compensation Act are independent and concurrent, *id.*; and (4) neither statute relieves an employer of obligations under the other. *Id.* Accordingly, then, we are left with the question of whether a self-insured employer that issues an NCP, but tenders payment only of Heart and Lung Act benefits, complies with, *or is in violation of*,

_____
MICHAEL H. WOJCIK, Judge

Judge Cohn Jubelirer dissents and wishes to be so noted.

<hr />

the Workers' Compensation Act. *See Tyson v. Workmen's Compensation Appeal Board (City of Chester)*, 446 A.2d 733, 734 (Pa. Cmwlth. 1982) (When an employee's disability brings him under the purview of both statutes, "the ultimate obligation for compensation lies in the Workmen's Compensation Act.").

Our case law offers little guidance on this issue. However, we acknowledge that our courts have repeatedly endorsed the practice of issuing an NCP with language that, however unartfully, purports to reflect both the employer's acknowledgement of liability for a work injury *and* the employer's satisfaction of its obligations under the Workers' Compensation Act. *See*, *e.g.*, *City of Erie*, 838 A.2d at 605 n.7 (to avoid the absurdity of requiring the self-insured to tender workers' compensation payments to the claimant and then require the claimant to return those same funds, "it would be proper" for an employer to simply issue a revised NCP and "refuse to pay" workers' compensation benefits); *Stermel*, 103 A.3d at 877-78 ("Self-insured public employers that pay Heart and Lung benefits do not also make workers' compensation payments because they would simply be returned"); *Findlay Township v. Workers' Compensation Appeal Board (Phillis)*, 996 A.2d 1111, 1114 (Pa. Cmwlth. 2010) (where the self-insured employer was paying the employee Heart and Lung benefits, it was "proper procedure" for the insurer to make payment of workers' compensation benefits directly to the employer).

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| City of Philadelphia, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1928 C.D. 2016 |
| | : | |
| John Hargraves, III | : | |
| Wayne Frazier | : | |
| Jacklyn Campbell | : | |
| James Campbell | : | |

O R D E R

AND NOW, this 28th day of February, 2018, the order of the Court of Common Pleas of Philadelphia County, dated August 15, 2016, is AFFIRMED.

The application to expedite filed by the City of Philadelphia is DISMISSED as moot.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,             :
             Appellant       :
                                   :
         v.             :   No. 1928 C.D. 2016
                                   :   Argued:  May 3, 2017
John Hargraves, III          :
Wayne Frazier               :
Jacklyn Campbell         :
James Campbell           :


BEFORE:   **HONORABLE MARY HANNAH LEAVITT, President Judge**
                **HONORABLE RENÉE COHN JUBELIRER, Judge**
                **HONORABLE ROBERT SIMPSON, Judge**[1]
                **HONORABLE P. KEVIN BROBSON, Judge**
                **HONORABLE PATRICIA A. McCULLOUGH, Judge**
                **HONORABLE ANNE E. COVEY, Judge**
                **HONORABLE MICHAEL H. WOJCIK, Judge**


*OPINION NOT REPORTED*

**DISSENTING OPINION**
**BY JUDGE BROBSON**                       **FILED:  February 28, 2018**


         I appreciate the majority's reliance on this Court's recent three-judge panel decision in *City of Philadelphia v. Zampogna*, ___ A.3d ___ (Pa. Cmwlth., No. 94 C.D. 2017, filed December 27, 2017), *petition for allowance of appeal pending*, (Pa., No. 68 EAL 2018, filed January 26, 2018).  Respectfully, however, I

---

[1] This case was argued before an *en banc* panel of the Court that included former Judge Julia K. Hearthway.  Because Judge Hearthway's service on the Court ended September 1, 2017, this matter was submitted on briefs to Judge Simpson as a member of the panel.

disagree with the *Zampogna* panel's construction of the Motor Vehicle Financial Responsibility Law (MVFRL)[2] provisions at issue.

Section 1720 of the MVFRL, 75 Pa. C.S. § 1720, provides, in relevant part:

> In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits . . . or benefits paid or payable by *a program, group contract or other arrangement whether primary or excess under Section 1719* (relating to coordination of benefits).

(Emphasis added.) The *only* way that benefits paid or payable under what is commonly referred to as the Heart and Lung Act[3] fall within this subrogation prohibition is if the Heart and Lung Act can be considered "a program, group contract or other arrangement" *under* Section 1719 of the MVFRL, 75 Pa. C.S. § 1719.

Section 1719(b) of the MVFRL expressly defines what constitutes "a program, group contract or other arrangement" for purposes of Section 1719 as follows:

> As used in this section the term *"program, group contract or other arrangement"* includes, but is not limited to, benefits payable by a hospital plan corporation or a professional health service corporation subject to 40 Pa. C.S. Ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health services plan corporations).

(Emphasis in original.)

---

[2] 75 Pa. C.S. §§ 1701-1799.7.

[3] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-638.

Hospital plan corporations and professional health services plan corporations are what are colloquially referred to as Blue Cross/Blue Shield health insurance plans. Applying the doctrine of *ejusdem generis*,[4] I would hold that statutory benefits under the Heart and Lung Act for workplace injuries and illnesses are not of the same general nature or class as health insurance benefits payable under Blue Cross/Blue Shield plans. Accordingly, I would hold that Section 1720 of the MVFRL does not preclude subrogation of Heart and Lung Act benefits.

The *Zampogna* panel expressly dealt with this argument and reached a different conclusion for three reasons. First, the panel concluded that the phrase "program, group contract or other arrangement" in Section 1720 of the MVFRL "has been understood to encompass Heart and Lung Act benefits in all the above-discussed precedent." *Zampogna*, ___A.3d at ___, slip op. at 17. In response, I note that none of the cases that the *Zampogna* panel cited to support this proposition addressed this particular statutory construction argument.

Second, the panel emphasized that the definition in Section 1719(b) of the MVFRL is expressly limited by the phrase "[a]s used in this section." The panel, therefore, concluded that the definition in Section 1719(b) does not apply to Sections 1720 and 1722 of the MVFRL, relating to subrogation. In response, I note the operative language of Section 1720 of the MVFRL—"a program, group contract or other arrangement whether primary or excess *under Section 1719*." (Emphasis added.) The phrase "a program, group contract or other arrangement" followed by the phrase "under Section 1719," must be construed as encompassing all of

---

[4] "Under [the] doctrine *ejusdem generis* ('of the same kind or class'), where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." *McClellan v. Health Maint. Org. of Pa.*, 686 A.2d 801, 806 (Pa. 1996).

Section 1719, including the very definition of the phrase set forth in subsection (b). With respect to Section 1722 of the MVFRL, 75 Pa. C.S. § 1722, the intent of the General Assembly to incorporate all of Section 1719, particularly the definition in subsection (b), is even clearer:

> In any action for damages against a tortsfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under . . . any program, group contract or other arrangement for payment of benefits *as defined in Section 1719* . . . shall be precluded from recovering the amount of benefits paid or payable under . . . any program, group contract or other arrangement for payment of benefits *as defined in section 1719.*

75 Pa. C.S. § 1722 (emphasis added).

The *Zampogna* panel's third and final reason for refusing to apply the definition in Section 1719(b) of the MVFRL is that Section 1719 of the MVFRL does not provide any type of first party coverage; rather, it simply establishes a priority of payment. *Zampogna*, ___ A.3d at ___, slip op. at 17-18. In response, while I can agree with the panel's view of the purpose of Section 1719 of the MVFRL, I disagree that the limited purpose of Section 1719 of the MVFRL permits us to ignore it when interpreting Sections 1720 and 1722 of the MVFRL, especially when those sections not only use the same phrase "program, group contract or other arrangement" found in Section 1719 but also expressly direct us to Section 1719 to determine what that phrase means.

For these reasons, I would overrule *Zampogna* to the extent it disregarded the definition of "program, group contract or other arrangement" found in Section 1719 of the MVFRL. Applying that definition, I would hold that neither Section 1720 of the MVFRL (prohibition on subrogation) nor Section 1722 of the

MVFRL (prohibition on recovering the amount of certain benefits paid or payable) apply to Heart and Lung Act benefits.

_____

P. KEVIN BROBSON, Judge


Judge Cohn Jubelirer joins in this dissenting opinion.